# Louisville Chair & Furniture Company v. Otter, et al.

### (Decided May 10, 1927.)

## Appeal from Jefferson Circuit Court
## (Chancery Branch, First Division).

1. Licenses.—The difference between a "license" and an "easement" is that a license is an authority to enter on land which is generally granted by parol and may be revoked by the licensor at pleasure and is not assignable, being a personal privilege, while an easement confers an interest in the land and may not be terminated at pleasure of servient owner.

2. Licenses.—Agreement that, as part of consideration for conveyance, grantee should have the privilege of keeping a connection, for the use and benefit of a sprinkling system, with a tank on property remaining with grantor held to create an easement rather than a mere license.

3. Easements.—Where water tank on property being purchased was connected by means of a pipe line with a sprinkler system on other property, it was sufficient to put the purchaser on inquiry as to the easement of the other property owner for such connection.

4. Principal and Agent.—Where prospective purchaser of servient estate inquired of one of dominant owners as to right to maintain connection of sprinkler system with water tank on servient estate, and the dominant owner stated that there was a right to the connection and that a copy of the papers giving such right could be seen at a title company, title company was not constituted agent of owners of dominant estate so as to make title company's error in exhibiting wrong paper chargeable to dominant owners.

5. Easements.—Where prospective purchaser of servient estate inquired as to the right by which a connection was maintained for the benefit of sprinkler system on dominant estate, dominant owner was only bound to give notice that the connection was claimed as a matter of right, founded on a written grant, and was not bound to exhibit the contract granting the right.

6. Easements.—Where prospective purchaser of servient estate inquired of dominant owner as to right to maintain connection of sprinkler system with water tank on servient estate, and dominant owner stated there was a right to the connection and that the papers could be seen at a title company, and the title company exhibited the wrong paper and purchaser made no inquiry of the vendor, purchaser held not to have exercised due diligence to ascertain extent of easement so that it might claim it purchased without notice thereof.

7. Easements.—Under agreement providing that easement for connection of sprinkling system with water tank on servient estate should continue until servient owner "sees fit to change the loca-

tion of or remove said tank," easement held not to terminate when deterioration of the old tank rendered it necessary to replace it with new one; "remove" signifying a change of location or the moving of an object from one place to another.

PETER, LEE, TABB & KRIEGER for appellant.

DAVID R. CASTLEMAN for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

Curd & Blakemore Company formerly owned and operated a large manufacturing plant in Louisville, Ky., which was housed in a number of different buildings. The various buildings were equipped with a sprinkler system, in connection with which it had erected an 80-foot steel tower and placed thereon a water tank of 40,000-gallons capacity to furnish the necessary pressure for its effective operation. On May 27, 1920, Curd & Blakemore Company sold a portion of its land to Otter & Co., and there was located on the lot so sold a building it had formerly used which had been equipped with a sprinkler system. At the time this deed was made the sprinkler system in the building on the lot conveyed was connected by means of water pipes with the tank which stood on the land not sold. No reference to this fact was made in the deed of conveyance, and no right to maintain that connection was granted by it. However, simultaneously with the execution of the deed and apparently for the reason that it was overlooked in drafting the deed, Curd & Blakemore Company and Otter & Co. executed a writing, the pertinent portions of which read:

"This agreement witnesseth that, as a part of the consideration for the purchase and conveyance of said lot of land, it is agreed between the parties hereto that so long as the sprinkling system in the building on the land conveyed in said deed, and which sprinkling system is a part of said building and conveyed in said deed, is attached to the large tank on the remaining lands of said first party, said second party is to have the privilege of keeping connection with said tank for the use and benefit of its said sprinkling system until such time as first party sees fit to change the location of or remove said tank,

after which said second party shall disconnect its said sprinkling system and make its own arrangements to operate the same.

"It is further agreed that, in case of fire in the premises of the party of the second part, said second party is to pay any extra cost for water that same may entail upon first party, or for refilling said tank."

This writing was never recorded, but was delivered to Otter & Co. and has been held by it and its successors in title ever since. The lot of land so purchased by Otter & Co. has passed by mesne conveyances and is now owned by John B. Otter and others, the appellees herein. The several subsequent deeds by which it has passed have made no reference to the right to maintain the connection between the sprinkler system and the tank, but by each of them the lot was conveyed "together with the improvements thereon and appurtenances thereunto belonging."

On March 3, 1926, Curd & Blakemore Company sold and conveyed to appellant, Louisville Chair & Furniture Company, the portion of its land on which the tower and water tank stand. No reference was made in the deed to the fact that the right to the connection to the tank had been granted for the benefit of the sprinkler system in appellees' building. Shortly thereafter it was ascertained that the tank on the water tower had so deteriorated that it would no longer hold water and would have to be replaced with a new tank. A controversy then arose between appellant and appellees as to whether, in replacing the tank, appellant would have to provide one of sufficient capacity to furnish water for the sprinkler system in the buildings on its own lot and in that on the lot owned by appellees. This proceeding was then instituted by appellees, under the Declaratory Judgment Act (Acts 1922, c. 83), and appellees insist that under the contract above, in view of the facts pleaded and disclosed by the evidence, appellant, in renewing the water tank, must provide one large enough to furnish water for the sprinkler system in the building on its lot, while appellant insists that such is not the case, but that, under the facts pleaded and established by the evidence, in renewing the tank, it is required to furnish a tank only large enough to care for its own sprinkler system, and

that appellees' right to connect with the tank has terminated.   Upon the trial below the chancellor adjudged for appellees, and appellant has appealed.

It is insisted for appellant that the right granted by the contract above was a mere license, as distinguished from an easement; that it was nonassignable; and that it terminated when Otter & Co. conveyed the lot it purchased from Curd & Blakemore Company.   The distinction between an easement and a license was defined by this court in Rittenhouse v. Swango, 97 S W. 743, 30 Ky. Law Rep. 145.   There the deed of conveyance granted to the party of the second part "the privilege of free access and use of the water of a certain mineral spring nearby, for the use and benefit of his house and those who may see proper to lodge with him at his house during the natural lifetime of the party of the second part; then and in that event the title to him for the within named property is to vest in fee simple in the children and heirs of the body of the second part[y] forever."   The grantee in that deed erected a commodious dwelling house on the tract of land conveyed to him and derived considerable income from accommodating boarders attracted by the curative value of the waters from the spring.   One of his guests became so impressed with the possibilities of the spring as a health resort that he purchased from the grantor the land on which it was located and sought thereafter to prevent the grantee, under the deed from which the above is quoted, and his guests from using its water, upon the theory that the right so granted was a mere license and not an easement, and was revoked when he purchased and took deed of conveyance for the land on which the spring was located.   In discussing that question it was said:

"The difference between a license and an easement is that a license is an authority to enter on land, but confers no interest in the estate; it is generally granted by parol, and may be revoked by the licensor at pleasure, and, being a personal privilege, is not assignable, and usually amounts to an excuse for what would otherwise be a trespass (Am. & Eng. Ency. of Law, vol. 18, pp. 1130-1141; Wilkins v. Irvine, 33 Ohio St. 138), whilst an easement confers an interest in the land, and invests the owner with privileges that he cannot be deprived of at the mere will or wish of the proprietor of the servient estate.

If the privilege in this spring and the right of access to it was merely a license granted by Harrison Swango, there would be no question about his right to revoke it, unless continued enjoyment of the privilege for more than 15 years would convert what was at first a license into an irrevocable interest in the land, of which the licensee could not be deprived by the licensor. We do not deem it necessary to further discuss this branch of the case, or determine when the use of premises by a licensee confers the right to the continued enjoyment, independent of the wish or desire of the licensor, as we are satisfied that the conveyance vested appellee with an easement in the land that could not be withdrawn by the grantor.''

There is no distinction between the two cases. There the grantee was granted the right to use the water from the spring. Here the grantee was granted the right to use the water from the tank. There the grantee was granted the right to pass over the lands of the grantor to reach the spring in order to use its water for the purposes contemplated. Here the same right is granted to the grantee, the pipe line being the medium through which the water is conveyed from the tank to the building of the grantee for use for the purposes contemplated. The court encounters no difficulty in reaching the conclusion that the right here granted was an easement rather than a mere license.

It is insisted for appellant that it purchased without notice, either actual or constructive, of appellees' easement in the real estate it purchased, and that therefore appellant is estopped to assert its right thereto. The facts are agreed. The writing supplemental to the deed under which appellees claimed the easement was never recorded. There was the visible, physical evidence of the easement on the lot purchased by appellant at the time of the purchase; that is, the pipe line, by which the physical connection between the sprinkler system in appellees' building and the water tank on the lot being purchased was there to be seen and was sufficient to put appellant on inquiry. It is stipulated that, while negotiating for the lot, appellant company inquired of one of the appellees to know by what right and authority his company maintained that connection, and was told ''that it had a right to the connection;'' and, further, ''that a

copy of the papers which entitled him to have such connection could be seen at the Louisville Title Company.''
When appellant visited the Louisville Title Company it was shown, not the written contract by which Curd & Blakemore Company had granted to appellees' predecessor in title the easement in question, a copy of which it had, but by mistake of the title company it was shown a paper dated March 3, 1920, which was a written proposal and acceptance constituting the negotiations which led to the conveyance by Curd & Blakemore Company to Otter & Co., in which the reference to the right to maintain connection between the tank and sprinkler system was worded somewhat different from that of the written contract quoted hereinbefore. From the stipulation of facts it does not appear that appellant pursued the inquiry further.

The title company had examined and guaranteed the title to Otter & Co. when it purchased from Curd & Blakemore Company, and at the time appellant company was informed by John D. Otter that "a copy of the papers which entitled him to have such connection could be seen at the Louisville Title Company,'' the title company had been employed by appellant company to investigate and pass upon the title of the lot which it was purchasing. This latter fact, appellees insist, made the title company appellant's agent with respect to the title, and that any knowledge in the possession of the title company consequently must be imputed to appellant company. For appellant company it is insisted that such is not the case, but that when John D. Otter referred it to the title company he thereby made the title company his agent for disclosing the source of his claim to the easement, and that as the title company did not show it the contract which granted the easement but another writing, under the terms of which, as it insists, appellees could not claim the right to maintain the water connection to a new tank that might be installed when the old one ceased to be usable, appellees are bound by the acts of their agent, and that, therefore, it purchased without knowledge that appellees had a writing which granted them the easement in question.

The stipulation of facts does not seem to sustain appellant's contention. The stipulation as to what occurred would not warrant us in concluding that John D. Otter

for appellees made the title company their agent to disclose the writing under which they claimed the easement in question, so that its failure to show the instrument granting the easement is chargeable to appellee company. It is agreed that, when appellant company inquired of John D. Otter by what right and authority his company maintained the connection with the water tank, it was told that "it had a right to the connection." Appellees were under no further obligation to appellant when the inquiry was made than to give notice that the right to the connection was claimed by them as a matter of right, founded upon a written grant of such right. It could have declined to exhibit the contract granting the right. They volunteered the further information that a copy of the contract could be seen at the title company. This was true. The mistake of the title company in exhibiting the wrong paper cannot be attributed to appellees, for when inquired of they put appellant on notice that they had a right to the connection, and were claiming it under a written grant. It does not appear to have made any inquiry of its grantor as to what right to the connection had been granted to appellees, and failure to see the writing granting the easement to appellees can only be attributed to lack of diligence upon its part. Since appellees notified it that they claimed the easement in the lot it was purchasing, founded upon a written grant, appellant cannot be held to have purchased without notice.

There remains to be determined, then, only the question whether, under the instrument granting to appellees or their predecessors in title the easement in question, which by its own terms provided that it should continue "until such time as first party sees fit to change the location of or remove said tank, after which said second party shall disconnect its said sprinkling system and make its own arrangement to operate the same," under the facts appearing the easement has terminated. It is insisted for appellant that, since the tank located on the tower to which the sprinkler system of appellees was connected has so deteriorated that it will not longer serve the purpose, but must be replaced by a new tank, appellees' right to the easement in question has terminated. Under the terms of the instrument creating it, the easement terminates when the "first party sees fit to change the location of or remove said tank." It is insisted for appellant that by discontinuing the use of the tank then being used, because it cannot be used longer, and replac-

. ing it with another tank it has "removed" the tank, within the meaning of the contract, and thereby terminated appellees' right to the easement.

It would seem to be impossible to separate the tank from the tower or structure on which it is located. It requires the tank maintained at the elevation afforded by its location on the tower to make it effective for the purpose for which it was used, and for which the parties intended that it might continue to be used by appellees. The condition under which it was provided that the easement should terminate, when the instrument creating it provided that that would happen, when "first party sees fit to change the location of said tank," certainly is not met when the tank then on the tower is replaced with a new tank. If any other condition under which the easement should terminate was provided, it must be found in the use of the word "remove." Webster's New International Dictionary gives the following definition of the word "remove," when used as a transitive verb:

> "To move away from the position occupied; to cause to change place; to displace; shift, as, to remove a building to another site; to remove a cause from one court to another; to take away from a person or thing; to cause to leave or cease to be; to put away; as, the apology removed the grievance; he was far removed from want; a remedy to remove a disease; sometimes to kill or cause to die; to force (one) to leave a place or go away; to dismiss from office, as to remove a postmaster."

It will be observed that, in one sense, the word may be used synonymously with the expression found in the contract providing the condition under which the easement should terminate; that is, to signify a change of location or the moving of an object from one place to another. In another sense, it may be used to signify that the object removed has been caused to cease to be. If used in the former sense by the parties to the contract in question, and as used in connection with the other language there found, it might be said that they were merely expressing in other language the intention already manifested by that used immediately preceding it; that is, that the change of location and removal of the tank were used synonymously. If it was intended that the latter meaning of the word be given to it, can it be said that there has been a removal of the water tank, that is, has

appellant caused it to cease to be by replacing it with another tank to be used for exactly the same purposes? This court has concluded that such is not the case. Taking into account the surrounding facts and circumstances and the evident purpose sought to be served by the clause of the contract in question, it seems perfectly clear that the parties intended that, so long as a water tank was maintained on the tower at its then location, the grantee and its successors in title would have the right to maintain connection with it for the uses indicated. Nothing in the instrument creating the easement imposes the duty on its grantor to replace the tank then being used on the tower when its days of usefulness shall have ended, but in view of the fact that the steel tower on which the tank was located, and which is indispensable in making the use of the tank effective for the purpose intended, is by far the most expensive part of this equipment, it is impossible to conclude that, by replacing the tank then on the tower with a new one to be used for exactly the same purposes, there has been a "removal" of the tank either in the sense of a change of location or that it has been caused to cease to be. Hence we conclude that the chancellor properly adjudged that the easement acquired by appellees' predecessor in title now owned by them has not been terminated or will not be terminated by replacing the tank then on the steel tower with a new tank to be used for the same purposes.

Finding no error in the judgment complained of, it will be affirmed.

Judgment affirmed.

Judges McCandless and Dietzman dissent from so much of the opinion as holds that appellant failed to use due diligence to ascertain the extent of the easement.