Jimmy Dale DUKES and Delores Dukes, Appellants,

v.

William Corey LINK, Appellee.

No. 2009–CA–000183–MR.

Court of Appeals of Kentucky.

July 2, 2010.

Randal K. Epley, Russellville, KY, for appellant.

Fred G. Greene, Russellville, KY, for appellee.

Before NICKELL and THOMPSON, Judges; BUCKINGHAM,[1] Senior Judge.

*OPINION*

THOMPSON, Judge:

This is an appeal from the Logan Circuit Court which found that an express easement existed over the property owned by Jimmy Dale and Delores Dukes in favor of the adjoining property owned by William Corey Link. The Dukes contend that because the easement was not contained in their chain of title, the easement was extinguished or, alternatively, that it had been abandoned by Link and they claim ownership to the property by adverse possession.

We agree with the trial court that an easement created by a recorded deed of the dominant tenement is not extinguished by its failure to be mentioned in the deed to a subsequent purchaser of the real property under the easement. We further conclude that the trial court did not abuse its discretion when it found that the easement had not been abandoned and denied the Dukes' claim of adverse possession. Therefore, we affirm.

The Dukes own lots 10 and 11 and Link owns adjoining lot 12 in a Logan County Subdivision. The lots were part of a larger tract known as the "Adler development" and owned by common grantors, Willie Adler and his wife, Bettye Adler. The parties stipulated that the deeds in Link's chain of title all described the easement now disputed.[2] However, because the

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. The trial court stated the parties stipulated that "the deed representing the chain of title for each party's respective ownership which went back to the creation of the subdivision area in 1961. The existence of the easement in the chain of title was stipulated." It is unclear whether the trial court erroneously found that the Dukes stipulated that the easement was contained in the Duke chain of title or if it properly applied the stipulation only to

chain of title to the three parcels is central to our analysis, a brief description of the easement and subsequent conveyances is warranted.

By deed dated June 9, 1962, and recorded in Deed Book 175 at page 274 in the Logan County Court Clerk's Office, the Adlers conveyed lot 12 to John A. Lile and his wife, Ruby Lile, in which the easement subject to the present litigation was created. Specifically, the deed stated:

Said Lot No. 12 of Adler's plat is conveyed together with an easement for driveway purposes over an existing gravel road which extends from Lot No. 12 through property of the grantors, Willie Adler and wife, Bettye Adler, to a county road.

The easement as described, in part, crossed a portion of lot 11, originally owned by the Adlers and extended from Lake Malone to a public road providing access from the road to the water's edge.

The property was again conveyed by deed dated May 27, 1987, which was duly recorded, from the Liles to Lewis Chapman and Jean Chapman which described precisely the same easement as that granted to the Liles by the Adlers. Subsequent conveyances of lot 12 of the original Adler development occurred in May 1992, March 1995, and April 1995, by deeds containing the same express easement description, all of which were recorded in the Logan County Court Clerk's Office. Finally, Link was conveyed lot 12 in October 1999, by deed containing the exact easement described in the 1962 recorded deed from the original grantors to the Liles and all subsequently recorded deeds.

Lots 10 and 11, now owned by the Dukes and which were also a part of the larger tract owned by the Adlers, were initially conveyed by the Adlers in March 1986 to Delmar Willis and his wife, Glodean Willis. The deed contained no reference to an easement over the property in favor of adjoining lot 12. Likewise, the deed conveying the property from the Willises to the Dukes did not contain the express easement created by the 1962 deed conveying lot 12.

The easement is a gravel roadway that leads to the water's edge. In 2006, Link replaced an existing mobile home on lot 12 with a constructed home which abuts the property line of lot 12. As a result, the only vehicular access Link presently has to Lake Malone is the easement conveyed in the 1962 deed and referenced in his deed. The present controversy arose in 2006, when the Dukes erected a gate across the easement which caused the filing of this action seeking an order requiring the gate's removal. In response to the complaint, the Dukes denied the existence of a valid easement across their property and filed a counterclaim alleging ownership by adverse possession.

During a bench trial, evidence was presented that the gravel roadway extending the entire distance from the public roadway to Lake Malone is clearly visible and used, at various times, by the owners of lot 12. Although the Dukes denied knowledge of the easement's existence, there was evidence that Link's predecessors in title had discussed the easement with Mr. Dukes and a surveyor testified that the easement was easily observable, which photographs confirmed.

The trial court concluded that by virtue of the 1962 deed and continued inclusion of the easement in Link's chain of title, an easement existed regardless of whether it was mentioned in the servient estate's

the Link chain of title. For reasons that will become apparent, even if an erroneous recitation of the parties' stipulation it has no effect on our resolution of the issue presented.

chain of title. Although the trial court found that the use of the easement was sporadic from 1962 until the present, no evidence was presented that Link or his predecessors in title took any action indicative of a specific intent to abandon the easement and there was no evidence that the Dukes continuously, openly or notoriously asserted ownership over the easement for a period of fifteen years. To the contrary, the trial court found that the "first and only act denying access by anyone to the roadway was when the Dukes placed a gate across the entrance to the roadway less than a year prior to the filing of this action."

■ The initial issue we address is whether the easement described in Link's chain of title is enforceable or, as urged by the Dukes, the omission of the easement in their chain of title precludes its enforcement. We emphasize that lots 10, 11, and 12, were part of a larger tract owned by a common grantor and the subject easement was included in all recorded deeds of conveyance of lot 12 since its creation. Our resolution of the issue presented begins with a review of the long ago established precedent regarding easements.

■ Easements are created by express written grant, implication, prescription or estoppel. An express easement is created by a written grant with the formalities of a deed. *Loid v. Kell*, 844 S.W.2d 428, 429 (Ky.App.1992). The nature of an easement is distinguishable from a mere license in that it is an incorporeal right-always separate and distinct from the right to occupy and enjoy the land itself. *Lyle v. Holman*, 238 S.W.2d 157, 159 (Ky.1951). It is a privilege or an interest in land and invests the owner with "privileges that he cannot be deprived of at the mere will or wish of the proprietor of the servient estate." *Louisville Chair & Furniture Co. v. Otter*, 219 Ky. 757, 294 S.W. 483, 485

(1927). In contrast to a restrictive covenant that restricts the use and enjoyment of property, an easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky.App.1991).

■ Easements can be in gross or appurtenant, the distinction being that "in the first there is not, and the second there is, a dominant tenement to which it is attached." *Meade v. Ginn*, 159 S.W.3d 314, 320 (Ky.2004)(quoting 25 Am.Jur.2d *Easements and Licenses in Real Property* § 11 (1996)). An easement appurtenant inheres in the land and cannot be "terminated by an act of the parties (for example, abandonment, merger, or conveyance) or by operation of law, as in the case of forfeiture or otherwise." *Scott*, 804 S.W.2d at 16.

Applying the law discussed to the present case, if Link's legal assertion is correct, by virtue of the 1962 deed and all subsequently recorded deeds in Link's chain of title, an easement appurtenant exists over the Dukes' property in favor of that owned by Link.

Having narrowed our issues and with sufficient legal background, we now turn to the specific issue to be addressed: Did the omission of the easement description in the Dukes' chain of title extinguish the easement appurtenant described in all recorded deeds in Link's chain of title? The issue is one of law which is subject to *de novo* review. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky.App.2005).

We find precedent for our decision in *Hopper v. Beddow*, 283 Ky. 337, 141 S.W.2d 278 (1940), where the Court rejected the assertion that an express easement must be mentioned in the deeds of the dominant and servient tenements where both were derived from a common grantor.

The Court recited the long-accepted legal precedent that an easement appurtenant runs with the land and concluded as follows:

A.M. Decker owned both of the lots in 1886, and in that year conveyed one of them to a predecessor in title of the appellees with a provision in the deed for the passway in question. We have noted also that the passway was established and used as such in accordance with the provision in the Ledford deed. It was for the benefit of the adjoining property owners and was an appurtenance to each piece of property and passed with each subsequent conveyance, regardless of whether mentioned in the deeds. See *Hatfield v. Hatfield*, 150 Ky. 788, 151 S.W. 3 [ (1912) ], and cases cited therein.

*Id.* at 279. Moreover, easements exist even when the deeds of the dominant and servient tenements do not mention an easement:

"The authorities are agreed, and such is the rule in this state, that where the owner of an entire tract of land, or of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication."

*Swinney v. Haynes*, 314 Ky. 600, 603–604, 236 S.W.2d 705, 707 (1951) (quoting *Hedges v. Stucker*, 237 Ky. 351, 35 S.W.2d 539, 540 (1931)).[3]

The legal reasoning of our predecessors was not novel and remains in conformity with the general rule as cited in 25 Am. Jur.2d *Easements and Licenses in Real Property* § 93 (2004):

A person who purchases land with knowledge or with actual, constructive, or implied notice that it is burdened with an easement in favor of other property ordinarily takes the estate subject to the easement. On the other hand, a bona fide purchaser of land without knowledge or actual or constructive notice of the existence of an easement in such land generally takes title free from the burden of the easement. This rule is broad enough to include all easements, whether created by implication, prescription, or express grant. However, one who purchases land burdened with an open, visible easement is ordinarily charged with notice that he or she is purchasing a servient estate.

Under the general rule that a purchaser of land subject to the burden of an easement takes the estate subject to the easement if he or she has notice of its existence at the time of purchase, the proper recordation of the instrument containing the grant of the easement is sufficient notice.

The Dukes recognize the prevailing majority rule recited and admit in their brief to this Court that: "Up to 1994, it is clear that the Appellants (the Dukes) would have been bound by the restriction or easement recorded in a deed not in their chain of title." However, the Dukes propose that the pivotal case that reversed the well-established property law cited is *Oliver v. Schultz*, 885 S.W.2d 699 (Ky.

---

**3.** The trial court found as a matter of law that the easement description in Link's chain of title was sufficient for the existence of an express easement. Although a persuasive argument can be made that the easement exists by implication, such would be a factual finding. Because we agree with the trial court's finding as a matter of law, we do not discuss an easement by implication.

1994). Thus, an analysis of that decision is warranted.

In *Oliver*, a common grantor placed restrictive covenants on four of nine parcels in a subdivision created from a single unrestricted tract. No subdivision plat was recorded. As a result, no restrictive covenant appeared in the chain of title to five of the nine tracts and no restriction was recorded regarding the five tracts deriving from the larger tract. The Court concluded it necessary to address the law in regard to restrictive covenants in view of confusion in the law as expressed in Judge Howerton's concurring opinion in *Bishop v. Rueff*, 619 S.W.2d 718 (Ky.App.1981). Ultimately, the Court concluded that a restriction placed in a collateral chain of title cannot bind a subsequent grantee without actual notice of the restriction unless it is included in a subsequent recorded subdivision plat or deed of restrictions. *Oliver*, 885 S.W.2d at 701.

Although modifying existing Kentucky law, the *Oliver* court limited its holding to restrictive covenants and left unaltered the law as applicable to easements.[4] It pointed out that those cases involving easements are truly applicable to the validity of a restrictive covenant purportedly established by an unrecorded instrument. *Id.* at 701. Although the Court gave little explanation as to the limitations imposed upon its holding, we believe its reasoning derives from deference to our recording statutes and a practical approach to the principles of property law.

Similarly, our approach is a pragmatic one. An easement is an interest in land protected by our recording statutes, which serve the purpose of protecting good faith purchasers against claims to the property of which they are not and could not have been reasonably aware, and to protect property owners from the wrongful conveyance of their property. As such, it is a fundamental rule that the grantor can grant only his interest in the property and is codified in KRS 381.150:

> A deed and warranty of land purporting to pass or assure a greater right or estate than the person can lawfully pass or assure, shall operate to convey on warrant so much of the right and estate as such person can lawfully convey.

In the present case, a common grantor first conveyed lot 12 by a recorded deed that created an express easement over the property later conveyed to the Dukes. Thus, at the time the property was conveyed to the Dukes, an ordinary title search back to the common grantor of the larger tract would have revealed that lots 10 and 11 were encumbered by an easement in favor of lot 12.

Not only do our recording statutes mandate the result reached in this case, but to hold otherwise would leave the holders of easements subject to the whim of a common grantor who could defeat that interest by conveying the same interest to multiple grantees by omitting the easement from the deeds. We conclude that the general rule applicable to easements in this Commonwealth is that the recording of the instrument that grants an easement by a common grantor binds a subsequent purchaser of the tract burdened by the easement regardless of whether it is included in the purchaser's deed.

4. The Restatement (Third) of Property Servitudes § 7.14 (2000) recognizes that: "Kentucky has recently moved from following the majority to a modified-minority-rule position." We caution that while accurate that Kentucky has modified its position in regard to restrictive covenants, we conclude that Kentucky adheres to the majority view in regard to easements.

Having held that a valid easement was created by the 1962 deed, the question remains whether there is merit to the Dukes' contentions that it had been abandoned. The trial court found that the facts did not substantiate the Dukes' claim, thus, our review is limited to whether the factual findings were clearly erroneous. "A factual finding is not clearly erroneous if it is supported by substantial evidence. Substantial evidence is evidence, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Gosney*, 163 S.W.3d at 898 (internal citations omitted).

Forfeiture of easements is not favored in the law and its mere nonuse without adverse possession is not sufficient to establish abandonment. When the easement is created by deed, it occurs "*only where in connection with nonuser there is a denial of title, or act by an adverse party, or attendant facts and circumstances showing an intention on the part of the owner of the easement to abandon it.*(emphasis supplied)." *City of Harrodsburg v. Cunningham*, 299 Ky. 193, 198, 184 S.W.2d 357, 359 (1945) (quoting *Johnson v. Clark*, 57 S.W. 474, 475, 22 Ky. Law Rep. 418 (1900)). The rule was further explained in *Schade v. Simpson*, 295 Ky. 45, 173 S.W.2d 801, 803 (1943): "Adverse possession and use for the prescriptive period will terminate an easement, but, to be effective, adverse possession of a right of way by the servient owner must be of the same character required to obtain title to real estate and the use must be wholly inconsistent with the right to enjoy the easement and amount to an ouster of the dominant owner."

There was ample evidence that Link did not abandon the easement and that he and his predecessors used the easement. There was testimony that since purchasing lot 12, Link used the easement to access the water and the front portion of his property. Link's predecessors in title had used the easement that was visible since 1961. Additionally, the easement was visible and had been used by the Links and the Dukes from 1999 to 2006, when the Dukes first objected to its use and placed a gate to block its path. Indeed, until the recent controversy, there was no evidence that the Dukes asserted ownership of the easement or interfered with Link's enjoyment of the easement. Having reviewed the evidence, we cannot say that the trial court's findings of fact were clearly erroneous.

Based on the foregoing, the judgment of the Logan Circuit Court is affirmed.

ALL CONCUR.