RENDERED:  OCTOBER 10, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-1051-MR

WESLEY A. COLLINS                                                    APPELLANT

v.                  APPEAL FROM HART CIRCUIT COURT
                    HONORABLE JOE G. BALLARD, JUDGE
                    CASE NO. 21-CI-00142

TERRY ELLIOTT AND
ELAINE DIGGES                                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE:  Wesley A. Collins, *pro se*, appeals from (1) a Hart Circuit

Court order entered on January 6, 2023, following a bench trial, and (2) a Hart

Circuit Court judgment entered on July 12, 2024, following a jury trial.  The

underlying litigation stemmed from disputes between Collins and his neighbors,

husband and wife Terry Elliott and Elaine Digges ("Elliott"), over the status of

several roadways and rights-of-way. Upon careful review, we affirm the order and judgment of the trial court.

As a preliminary matter, we note that the appellant's brief fails to comply with Kentucky Rules of Appellate Procedure ("RAP") 32(A)(3), which requires in part that the appellant's opening brief contain "[a] **statement of the case** consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues presented by the appeal[.]" Kentucky's Basic Appellate Practice Handbook describes the statement of the case as "the 'story' of the case. It sets out the facts of the case and the procedural events the judges need to know to understand the case." Collins's statement of the case does not meet this standard. It lacks a clear and comprehensible narrative of the facts of the case. It fails to describe adequately the location and significance of the various disputed roadways or to designate them in a consistent manner.

The brief also fails to comply adequately with RAP 32(A)(4), which requires:

> An **argument** conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

RAP 32(A)(4).

This case was in litigation for almost three years. The parties amended their claims and made various counterclaims. The trial court ruled on numerous motions and conducted a bench trial and a two-day jury trial. The record of the proceedings consists of seven volumes containing well over one thousand pages, eight discs of recordings, five envelopes of exhibits, and five depositions. It is well-established that it is not the responsibility of this Court to scour the record to determine whether an issue has been preserved for appeal. *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019). Similarly, it is not the job of this Court to review the entire record in order to understand the underlying facts of the case.

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, . . . ; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citations omitted). We recognize, however, that "[p]ro se pleadings are not required to meet the standard of those applied to legal counsel." *Beecham v. Commonwealth*, 657 S.W.2d 234, 236 (Ky. 1983). Recognizing Collins's *pro se* status, we will not adopt any of the three options provided in *Hallis*. We will, however, review Collins's arguments only insofar as we are able to do so without reviewing the entire appellate record in order to reconstruct the underlying facts of the case or to find where an allegation of error was preserved.

## FACTUAL AND PROCEDURAL HISTORY

Collins owns two adjacent farms in Hart County, the Wilson Farm to the north, comprising approximately 100 acres, and the Huber Farm to the south, comprising approximately 50 acres. Elliott owns an adjoining farm of 43 acres which he acquired in 1988. The Collins and Elliott properties were once part of a larger tract of land owned by William A. and Elizabeth Wilson. Parts of the Wilson property were acquired by the Wilsons' son, W.R. Wilson, in 1893 and in 1901. Forest A. Finley acquired other parts of the property in 1921. The Huber Farm was originally part of the Finley tract, and the Elliott property was subdivided from the Huber Farm.

After a conflict with Collins arose over Elliott blocking access to a roadway on his property, Elliott filed a complaint in Hart Circuit Court on August 6, 2021, seeking a declaratory judgment pursuant to Kentucky Revised Statutes (KRS) 418.030. The litigation centered on the following roadways:

### i. The Wilson Roadway

The W.R. Wilson right-of-way or "Wilson Roadway" provides access from the Elliott property across the Wilson Farm to the county road. Elliott argued that it was an enforceable easement appurtenant to his property. Collins argued that he owns this right-of-way in fee simple as part of the Wilson Farm.

**ii. The "Yard easement" or "Old Huber Residence easement"**

When Collins purchased the Huber Farm in 2021, it had been vacant for several years. According to Collins, the Huber Farm property included a roadway that ran from the old Huber home across Elliott's front yard and connected to the Wilson Roadway. Elliott argued that this roadway was an easement that had been abandoned by Michael Huber in 2014, when he built a new access road exclusively on property owned by him. Elliott blocked this roadway to prevent Collins from accessing it.

**iii. The "4.67-acre field easement"**

This roadway runs across Elliott's property to a field owned by Collins. Elliott placed obstructions in the roadway, arguing that it was abandoned by Huber and that it had not been used for at least thirty-three years.

**iv. The "Heiberger Property easement"**

Two years into the litigation, Elliott acquired a smaller, adjoining farm known as the Heiberger tract. He blocked a roadway being used by Collins, apparently known as "the Gateway."

The trial court denied two motions for summary judgment brought by Collins and bifurcated the action. It conducted a bench trial on December 14, 2022, to determine the legal status of the Wilson Roadway. It then conducted a

jury trial on July 8 and 9, 2024, to determine whether the various disputed easements had been abandoned, the status of a shared well, and damages.

Following the bench trial, the trial court construed the pertinent deeds and found that the Wilson Roadway was an easement and was not owned by Collins in fee simple.

The jury found that (1) the "Old Huber Residence" easement which crosses Elliott's property and goes to Collins's property had been abandoned; (2) the "4.67-acre field" easement existed and had not been abandoned; and (3) the "Heiberger Property" easement (or "Gateway") which allegedly goes across Elliott's property does not exist.

The jury further found that Collins had intentionally trespassed on Elliott's property and awarded $500 in damages. It found that Collins was required to pay Elliott $10 per month for electricity for a shared water well. It found that Elliott and Digges had intentionally trespassed on Collins's property but did not award any damages. It found that Elliott and Digges did not create a private nuisance. It found that Collins, in intentionally trespassing on Elliott's property, acted towards Elliott with fraud, oppression, or malice, and awarded damages in the amount of $1,500; and also found that Elliott, in intentionally trespassing on Collins's property, acted with fraud, oppression, or malice and awarded punitive damages in the amount of $500.

-6-

This appeal by Collins followed.  Further pertinent facts will be set forth below.

## ANALYSIS

Collins's first argument concerns the trial court's determination, following the bench trial, that the Wilson Roadway was an easement which Collins did not own in fee simple.

When we review a judgment following a bench trial, the trial court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  Kentucky Rules of Civil Procedure (CR) 52.01.  A factual finding is not clearly erroneous if it is supported by substantial evidence, which is defined as evidence that has sufficient probative value to induce conviction in the mind of a reasonable person.  *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005).  The interpretation of a deed presents an issue of law for the court, and our review proceeds *de novo.  Colyer v. Coyote Ridge Farm, LLC*, 565 S.W.3d 659, 663 (Ky. App. 2018).

The trial court found that all the property at issue in this case, approximately 200 acres, was originally owned by William A. and Elizabeth Wilson.  In 1893, they conveyed a four-acre tract to their son, W.R. Wilson, with "a roadway to the County road."  In 1901, W.R. Wilson purchased a tract of 100

acres from Elizabeth Wilson and other heirs of William Wilson. The purchase included the four-acre tract he had already received in 1893, but the 1901 deed did not mention "a roadway to the County road."

In 1921, Forest A. Finley purchased a one-hundred-acre tract from W.R. Wilson and other heirs of William and Elizabeth Wilson. The Finley tract was separate from W.R. Wilson's tract, and Finley's original deed did not mention a roadway or right-of-way being provided for W.R. Wilson's property. Elliott's 43-acre farm is part of the Finley tract.

Also in 1921, however, Forest Finley, his wife Martha, and another couple, the Logsdons, did provide W.R. Wilson with "right of way" via a separate deed which stated in pertinent part:

> That said party of the first part, for and in consideration of a right of way granted to the said W.R. Wilson by W.A. Wilson, decd., by deed bearing date April 27, 1893, which is recorded in the Hart County Court Clerk's office . . . said right of way having . . . never been located permanently, the said F.A. Finley and W.R. Wilson's [sic] and N.L. Logsdon have agreed where said right of way shal[l] be and have surveyed same set the corners as hereinafter described right of way to be 20 feet wide and by north and east of the line described right of way is to be a gateway, said Wilson to make and keep up all gates that is [sic] necessary for said right of way do her[e]by hereby sell and convey to the part of the second part, his heirs and assigns, the following described property, to wit: One certain right of way described as follows[.]"

The legal description of the right-of-way follows in the deed from the Finleys and Logsdons to Wilson.

The trial court further found that after 1921, deeds for this property, including Elliott's deed, refer to the right-of-way. The language used in these subsequent deeds states: "there is reserved and not conveyed a right-of-way that runs thru the above boundary which was conveyed to W.R. Wilson in May, 1921, said right of way being 20 feet in width and starts at Bacon Creek at the Wilson Ford and runs in a southeastwardly direction across the above boundary to the Bonnieville and Rocky Hill Road."

The trial court further noted that a plat created in 1988 showed the W.R. Wilson 20-foot roadway was created in May 1921.

The trial court concluded as a matter of law, based on the plain language of the deeds, that in 1893, William A. and Elizabeth Wilson intended to provide their son, W.R. Wilson, access to the property he owned that adjoined their property. When W.R. Wilson transferred property to Finley on May 5, 2021, he inadvertently forgot to reserve a roadway for himself. This error was subsequently cured by the deed from the Finleys and Logsdons to W.R. Wilson, acknowledging his right of way. The court found that the term "right-of-way" is typically associated with the definition of an easement and noted Black's Law Dictionary defines "right-of-way" as "the right to pass through property owned by another."

Thus, the trial court concluded that use of the term "right-of-way" in the 1921 deed supports a finding that the roadway was an easement, rather than a fee simple transfer to W.R. Wilson.

The trial court found that the 1893 deed and the 1921 deed are ambiguous regarding the Wilson Roadway because they do not contain language expressly providing for either a fee simple interest or for an easement. In construing the ambiguity to mean that the deeds conveyed an easement, the trial court analogized to a Kentucky case involving a railroad easement, which states:

> If, in a deed to a railroad, the land conveyed is described as a right of way, the deed may be construed as giving an easement right only, and not the full fee, notwithstanding there are other words in the deed referring to the fee simple, for such a conveyance does but imply a grant of the easement forever.

*Illinois Cent. R. Co. v. Roberts*, 928 S.W.2d 822, 825 (Ky. App. 1996) (citation omitted).

The trial court also considered parole evidence in the form of the intent of the original grantors. William A. and Elizabeth Wilson transferred the property to W.R. Wilson in consideration of the love and affection they had for him, and for the price of one dollar. The Wilson Roadway bisected William and Elizabeth's farm. The trial court concluded that it would make no sense for them to grant their son fee simple ownership of a road running directly through their

-10-

farm. The trial court felt it made more sense that they would want to give their son an easement so he could access his four-acre tract on the other side of the farm.

On appeal, Collins argues that the roadways and rights-of-way referenced in the deeds were not easements but were retained in fee simple and therefore were not subject to abandonment. He points out that the term "right-of-way" has no clear legal definition relating to a type of ownership and references the People's Law Dictionary, which states that rights-of-way can be owned in fee. He also points out that many utility roadways or rights-of-way, such as railroad rights-of-way, are held in fee simple. He contends the trial court's holding that the language is ambiguous conflicts with the clear language in the remainder of the deed and that the granting and habendum clauses should rule the document.

Although Collins can point to evidence to the contrary, it is not adequate grounds to disturb the trial court's findings. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent . . . [a] finding from being supported by substantial evidence." *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 307 (Ky. 1972) (citation omitted). The trial court's conclusion that the language in the deeds conveying a right-of-way meant the conveyance of an easement will not be reversed on appeal because it is supported by the evidence. Further, it is fully in accordance with our case law, which states "when land is unconditionally granted for right of way purposes, the

-11-

deed merely conveys an easement and not a fee-simple title to the land." *Schmid v.*
*Anderson*, 311 Ky. 1, 4, 222 S.W.2d 931, 933 (1949) (citing *Mammoth Cave*
*National Park Association v. State Highway Commission*, 261 Ky. 769, 88 S.W.2d
931 (1935)).

Next, Collins argues our current law relating to the abandonment of
deeded appurtenant easements is vague and is being abused to deprive property
owners of their rights. As evidence for the unsettled state of the law regarding the
abandonment of easements, he points to an alleged conflict between two Court of
Appeals opinions: *Dukes v. Link*, 315 S.W.3d 712, 715 (Ky. App. 2010), and
*Colyer*, 565 S.W.3d at 663.

*Dukes* contains the following quotation from *Scott v. Long Valley*
*Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991): "An easement
appurtenant inheres in the land and cannot be terminated by an act of the parties
(for example, abandonment, merger, or conveyance) or by operation of law, as in
the case of forfeiture or otherwise." *Dukes*, 315 S.W.3d at 715 (Ky. App. 2010)
(quoting *Scott*, 804 S.W.3d at 16) (internal quotation marks omitted).

Eight years later, *Colyer* pointed out that the quotation misstates the
law because *Dukes* omitted the first part of the quotation from *Scott*. *Scott* actually
states that "*[o]rdinarily, such right is forever, unless, of course*, terminated by an
act of the parties (for example, abandonment, merger, or conveyance) or by

operation of law, as in the case of forfeiture or otherwise." *Scott*, 804 S.W.2d at 16 (emphasis added). *Colyer* cautions "the bench and bar in Kentucky to not cite *Dukes* or *Baker* as authority for the erroneous proposition that easements appurtenant can never be extinguished by acts of the parties." *Colyer*, 565 S.W.3d at 663.

*Colyer* plainly resolves any ambiguity regarding the abandonment of easements.

Specifically in reference to the Old Huber residence easement or "yard easement," Collins argues that the jury erroneously based its finding of abandonment solely on evidence of non-use. It is unclear whether this argument was preserved by a motion for a directed verdict. Our review indicates there was considerable additional evidence supporting the finding of abandonment. Elliott's predecessor, Huber, built a new road which he used exclusively to access his home and the rest of the property; he stopped maintaining the easement, allowing grass and trees to grow on it; a quit claim deed from Carol Huber to Michael Huber did not include the description of the "yard easement"; and the deed conveying the property from the estate of Michael Huber to Elliott did not include the yard easement. In light of this evidence, the jury's finding of abandonment cannot be disturbed on appeal.

Collins's next argument relates to the easement to access the 4.67-acre field. He acknowledges that the jury found in his favor by finding that this particular easement had not been abandoned but argues that it should not have been taken from him during the course of the litigation, and that his rights to use the property should have been restored immediately by law enforcement. Collins claims he had to build a road through an adjacent farm he owns in order to access the field due to the obstructions. Collins refers to a trial court order to maintain the "status quo," but it does not provide a citation to the record to indicate when this issue was raised before the trial court and what specific arguments were made at that time. Similarly, he does not indicate whether he sought damages for the period he was deprived of the use of this particular easement. There is simply insufficient reference to the record to review this claim.

Collins's next argument concerns a connector or "Gateway" from the Wilson roadway. He describes it as the only viable access to the east end of the Wilson Farm. There is no reference to the "Gateway" in the jury instructions, but our own review indicates that Collins is referring to the Heiberger easement, which the jury determined does not exist. The instructions stated:

> Elliott and Digges claim no easement or road exists
> across property they own which was formerly known as
> the "Heiberger Property," recorded in Deed Book 373,
> Page 617. Collins claims he has an easement across the
> Heiberger Property to access the east end of the farm.

-14-

Do you believe an easement exists across the Heiberger Property?

Collins argues that these jury instructions were inadequate. "Alleged errors regarding jury instructions are considered questions of law that we examine under a *de novo* standard of review." *Carmical v. Bullock*, 251 S.W.3d 324, 328 (Ky. App. 2007) (citations omitted). Kentucky law mandates the use of "bare bones" jury instructions in all civil cases. *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 229 (Ky. 2005). "Our approach to instructions is that they should provide only the bare bones, which can be fleshed out by counsel in their closing arguments if they so desire." *Id.* at 228. The jury instructions regarding the Heiberger Property complied with Kentucky's bare bones approach, and there is no indication that Collins was denied the opportunity to flesh out the instructions during his closing argument.

Collins also disputes the jury's award of $2000 in damages to Elliott. Collins argues that the amount of damages was improperly inflated by the prejudicial actions of Elliott's counsel, who was permitted, over objections, to state the names of other individuals with whom Collins was engaged in litigation. He further alleges, without specific references to the record, that the jury foreperson, whose last name was Goodman, could be related to one of these individuals and that he noticed Goodman's stare "seemed very odd and direct" during closing statements. He contends that the damages were clear juror error, as a person using

their deeded property rights is not intentionally trespassing and that the error was likely caused by the vague, non-existent definition of trespassing in the jury instructions. Because Collins's arguments are speculative and lack adequate references to the record, the award of damages will not be reversed.

Finally, Collins argues that his two motions for summary judgment should have been granted because Elliott never offered any evidence to prove the legal abandonment of the roadways and that the trial court unnecessarily kept dozens of meritless claims active for years, thereby causing him damages. He suggests that time restrictions be implemented to prevent this type of situation.

The trial court is specifically directed not to resolve any issues of fact at the summary judgment stage. "The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013), *as corrected* (Nov. 25, 2013). "Summary judgment is to be cautiously applied and should not be used as a substitute for trial." *Id.* (citation omitted). "Granting a motion for summary judgment is an extraordinary remedy and should only be used to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Id.* (citation

omitted). Even when the record reflects "grave doubt that a claimant may prosecute his action to a successful conclusion, . . . he should be permitted to at least try. He should not be compelled to try his action on a motion for summary judgment." *Dugger v. Off 2nd, Inc.*, 612 S.W.2d 756, 758 (Ky. App. 1980) (citation omitted).

The trial court acted well within these principles in denying the motions for summary judgment and did not improperly prolong the proceedings. The length of the trial and the large quantity of evidence presented to the jury regarding the status of the disputed roadways affirms the trial court's decision that summary judgment was not appropriate.

## CONCLUSION

For the foregoing reasons, the order entered on January 6, 2023, following the bench trial, and the judgment entered on July 12, 2024, following the jury trial, are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Wesley A. Collins, *pro se*
Bonnieville, Kentucky

BRIEF FOR APPELLEES:

Joseph M. Harris
Leitchfield, Kentucky