**John SAWYERS, et al., Appellants**

v.

**Arthur BELLER, et al., Appellees.**

**No. 2010–SC–000678–DG.**

Supreme Court of Kentucky.

Sept. 20, 2012.

Rehearing Denied Dec. 20, 2012.

James T. Kelley, The Kelley Law Offices, Elizabethtown, KY, for Appellant.

Steven Owen Thornton, Attorney At Law, Bowling Green, KY, for Appellant.

Opinion of the Court by Justice SCHRODER.

This Court granted discretionary review of part of a Court of Appeals' opinion which affirmed a judgment of the Allen Circuit Court restricting the Appellants' rights to the use and maintenance of a road or access easement across the Appellees' property (known as the Fishback Roadway or Fishback Passway). Because the Appellants had an express easement to the access road, without any reservations or restrictions as to their use of the road, the circuit court's order restricting the use and maintenance of the road was improper, and we reverse that part of the Allen Circuit Court's judgment.

The Appellants, John and Elizabeth Sawyers (the Sawyers) and the Appellees, Arthur and Joyce Beller (the Bellers) are adjoining landowners in Allen County, Kentucky. The parties both trace their

interests in the roadway back to a common grantor. The record establishes that James T. Gibson, Sr. (Gibson, Sr.) and his wife owned a 202 ½–acre tract in Allen County prior to 1881. Gibson, Sr. and his wife conveyed the entire 202 ½–acre tract to James T. Gibson, Jr. (Gibson, Jr.), around 1881.[1]

Gibson, Jr. and his wife conveyed a 62 ½–acre tract to George W. Shields, through a deed that was partially destroyed by fire but which evidence introduced at trial revealed was executed on "December 25, 18,"[2] with partial payment due in December 1884 and another payment due on December 25th of a subsequent year. The deed was recorded on October 13, 1890. Gibson, Jr. and George Shields signed a second deed (a correction deed) on May 14, 1902, which read that it was conveying what was intended to be conveyed by a deed given on December 25, 1882, but which was not properly conveyed as the boundaries were incorrectly described.

Thereafter, Gibson, Sr. and his wife reaffirmed their conveyance of the 202 ½–acre parcel to their son, Gibson, Jr., by deed dated January 6, 1912, explaining that the original deed had "been destroyed by burning of the records in [the] Allen County Clerk's Office." This deed also explains any apparent discrepancies between its date and the date of the earlier Gibson–Shields deeds by noting that:

now since the making of first title ... which has been destroyed[,] James T. Gibson Jr. has by deed conveyed to one George Shields 62 ½ acres of this land.... A mention of this is made to

located among the burned records and was noted to have been executed on February 18, 1881.

1. The deed in this conveyance was destroyed by a fire in the county courthouse in 1902; however, the Grantor's index from 1865–1902 reveals an entry for a deed from Gibson, Sr. to Gibson, Jr. This entry appeared in the index above an entry for a deed recorded from Godley to Pulliam, a deed which was

2. The last two numbers of the year were destroyed.

show why Shields Deed dates behind this one 85 to show that Shields title is good 85 said James T. Gibson Sr. is making this title to protect James T. Gibson Jr. 85 Shields 85 himself.

The timing of Gibson, Jr.'s ownership is relevant to the present case because the record establishes that Gibson, Jr. also conveyed a "right of way for a road on the northeast end" of the 202 ½–acre tract to the heirs of James Fishback by deed dated March 28, 1881, which is earlier in time than the Shields' deed.[3] This deed further specified that the "[r]oad [wa]s to be 16 foot from a certain fence." The Fishback heirs are in the Sawyers' direct chain of title to the property that adjoins the Bellers' property at the northeast corner. The evidence establishes that this right of way was historically used to service a separate farm known as the "Fishback Farm."

At some point, the Fishback road[4] was graveled and maintained in order to allow cattle trucks to pass to and from Fishback Farm. However, a successor to George Shields' parcel, the Manions,[5] placed a locked gate, 12 feet wide, at the entrance of the road to block access to the road by the general public. Nevertheless, the Manions did provide the Sawyers' predecessor in interest with a key to unlock the gate.

Fishback Farm was eventually consolidated with other tracts in order to create a larger tract of several hundred acres, which the Sawyers now own. After the Bellers acquired their property, they refused to provide the Sawyers with a key to the gate, apparently on advice from legal counsel. The Sawyers wanted to use the passway in order to move farm equipment to the back part of their property when access from the other public roadway is hindered due to inclement weather. They filed suit in the Allen Circuit Court to enforce their right as successors in interest to certain roadways, including the Fishback road. The circuit court ordered the Bellers to permit the Sawyers to use the Fishback road for the purpose of the Sawyers' "personal, non-commercial access to the back part of their property," but allowed the Bellers to maintain "the gate as presently constructed and ... to keep the gate locked at all times subject to the [Sawyers'] right to a key." The trial court further adjudged that the Sawyers had "a duty to maintain the Fishback Roadway for the limited purpose of making it passable for their vehicles and farm equipment but shall not be permitted to pave, rock or otherwise materially change the current condition of the roadway."

On appeal, the Court of Appeals affirmed the judgment of the circuit court. We granted discretionary review, limited to the issue of the extent of an easement owner's right to maintain his right-of-way and the scope of limitations that may be imposed thereon.

Because this matter was tried without a jury, we review the trial court's findings of fact for clear error. *McClendon v. Hodges,* 272 S.W.3d 188, 190 (Ky. 2008) (citing CR 52.01). The trial court's conclusions of law are reviewed *de novo. Id.*

The trial court concluded that an express easement existed for the Sawyers, but that their use of the easement must be

---

3. This would make the Fishback parcel the dominant estate and the Shields parcel the servient estate.

4. The trial court referred to the Fishback road as "Fishback Roadway" and "Fishback Pass-

way" interchangeably. We shall refer to it herein as "the Fishback road."

5. The Bellers' predecessor in interest.

"reasonable and as little burdensome to the landowner as the nature and purpose of the easement will permit." The trial court concluded that, within the scope of reasonableness, the Sawyers were limited in using the road to making it passable for their vehicles and farm equipment, but that they were prohibited from paving, graveling, or otherwise materially changing the condition of the roadway. We disagree.

Under Kentucky law, the rights created by an easement depend upon its classification. *Loid v. Kell*, 844 S.W.2d 428, 430 (Ky.App.1992). An express easement is created by a written grant with the formalities of a deed. *Id.* at 429–30. The nature of an easement is distinguishable from a mere license in that it is an incorporeal right, which is always separate and distinct from the right to occupy and enjoy the land itself. *Lyle v. Holman*, 238 S.W.2d 157, 159 (Ky.1951). It is a privilege or an interest in land and invests the owner with "privileges that he cannot be deprived of at the mere will or wish of the proprietor of the servient estate." *Louisville Chair & Furniture Co. v. Otter*, 219 Ky. 757, 294 S.W. 483, 485 (1927).

In the case of an express easement, such as is present in the instant case, the terms of the conveyance determine the rights and liabilities of the parties. *See Texas E. Transmission Corp. v. Carman*, 314 S.W.2d 684, 687 (Ky.1958) (citing *Puckett v. Hatcher*, 307 Ky. 160, 209 S.W.2d 742, 744 (1948)). If the language is unambiguous, the intent of the parties at the time the easement agreement was executed must be determined from the context of the agreement itself. *Id.* An easement confers a right upon the dominant tenement to enjoy a right to enter the servient tenement. *See Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky.App.1991). While an easement holder may not *expand* the use of the easement, it is equally true that the easement grantor may not interfere with the easement holder's use of the easement. *Commonwealth, Dept. of Fish and Wildlife Res. v. Garner*, 896 S.W.2d 10, 13–14 (Ky.1995).

With respect to an express easement for a road or passway, our law holds that the servient owners must permit the free and unrestricted use of the passway by the owners of the dominant estate. *Sandman v. Highland*, 312 Ky. 128, 226 S.W.2d 766, 768 (1950) (citing *Jenkins v. Depoyster*, 299 Ky. 500, 186 S.W.2d 14 (1945); *Wells v. N.E. Coal Co.*, 255 Ky. 63, 72 S.W.2d 745 (1934); *Kentucky & West Virginia Power Co. v. Elkhorn City Land Co.*, 212 Ky. 624, 279 S.W. 1082 (1926)). While it is true that the owners of the dominant estate must use their right so as to be as little burdensome as possible to the servient estate, *id.*, it is nevertheless also true that the owners of the easement are not strictly limited to purposes for which it had been historically used. *Cameron v. Barton*, 272 S.W.2d 40 (Ky.1954).

In *Cameron*, the appellant's predecessor in interest granted a passway right to the appellee. On appeal, the appellant argued that the use of the passway should be restricted to that for which the passway had historically been used. In affirming the lower court, our predecessor Court explained that the appellant's argument would only have merit "if we were considering an easement by prescription." *Id.* at 41. On the contrary, the court in *Cameron* pointed out that the easement at issue was an express easement created by deed and that there were no restrictions imposed as to its use. Because an express, unrestricted passway easement was involved, the Court refused to limit the dominant estate to using the passway only for

purposes for which it had been historically used.

Likewise, in the present case, the Sawyers, as owners of the dominant estate, have an express easement to the Fishback road. The road had been graveled in the past by the Sawyers' predecessors in interest and maintained in order to allow cattle trucks to pass to and from Fishback Farm. Therefore, the trial court's restriction limiting the Sawyers' use of the road to personal use and prohibiting the Sawyers from paving or rocking the road was unreasonable. Moreover, the express easement provided that the road was to be sixteen feet wide and the Bellers, as owners of the servient estate, must permit the free and unrestricted use of the sixteen-foot road by the owners of the dominant estate. *Sandman*, 226 S.W.2d at 768. Thus, the trial court's judgment that the Bellers could maintain a twelve-foot gate on the road was erroneous.[6]

Because the Appellants had an express easement to the Fishback road, without any reservations or restrictions, the circuit court's order restricting the use and maintenance of the road was improper, as was the Court of Appeals' opinion affirming on that issue. For the foregoing reasons, we reverse in part the opinion of the Court of Appeals and that part of the Allen Circuit Court's judgment that restricted the Sawyers' rights to the use and maintenance of the Fishback road.

All sitting. ABRAMSON, NOBLE, SCOTT, and VENTERS, JJ., concur.

MINTON, C.J., concurs in part and dissents in part by separate opinion in which CUNNINGHAM, J., joins.

MINTON, C.J., Concurring, In Part, and Dissenting, In Part:

I agree with the majority that the trial court erroneously prohibited the Sawyers from paving, graveling, or otherwise materially changing the condition of the roadway. But I disagree with the majority's conclusion that the trial court improperly limited the Sawyers' use of the road to personal use. "The general rule is that an easement owner can make only such use of an easement as is reasonably necessary to accomplish the purpose for which the easement was granted...."[7] Here, the easement granted a right-of-way for a road that was historically used to service a separate farm. The easement was not specifically limited to the easement owners' personal use, but even "an easement in general terms is limited to a use as little burdensome to the servient estate as possible for the use contemplated."[8] I would follow the rule established by precedent that "[e]asements may not be enlarged on or extended so as to increase the burden on or interfere with the servient estate."[9] Because use of the easement for commercial purposes other than the passage of farm equipment would overly burden the servient estate, the trial court properly limited the Sawyers' use of the easement to personal use.

CUNNINGHAM, J., joins.

---

**6.** The reasonableness of the gate itself is not at issue—only the width.

**7.** 28A C.J.S. *Easements* § 213 (2012) (citations omitted).

**8.** *Id.* (citation omitted).

**9.** *Commonwealth, Dep't of Fish & Wildlife Res. v. Garner,* 896 S.W.2d 10, 14 (Ky.1995) (citation omitted).