Jude WEBER, Appellant

v.

Thomas Francis LAMBE, Appellee

2015-SC-000173-DG

Supreme Court of Kentucky.

MARCH 23, 2017

COUNSEL FOR APPELLANT: Allen McKee Dodd, Louisville, Jacob Wayne Crouse, Dodd & Dodd Attorneys, PLLC.

COUNSEL FOR APPELLEE: Eugene L. Mosley, Louisville, Michael Thomas Underwood, Mosley, Sauer, Townes & Watkins, PLLC.

OPINION OF THE COURT BY JUSTICE KELLER

Jude Weber and Thomas Francis Lambe cross-appeal the decision of the Court of Appeals to reverse in part and affirm in part the Jefferson Family Court. This Court granted discretionary review, and for the reasons stated herein, we affirm in part and reverse in part the opinion of the Court of Appeals.

## I. BACKGROUND.

Weber and Lambe were married on October 10, 1992. They remained together for nineteen years before separating. Two children were born during the marriage: Margaret, born in December 1996, and Kevin, born in September 1999. Margaret was diagnosed with juvenile diabetes at the age of two and was diagnosed with an eating disorder approximately two to three months before trial. Margaret's health issues require frequent trips to various physicians, assistance with administration of insulin, and monitoring after meals. Weber is a stay-at-home mother, who has not worked outside the home since Margaret was born. Lambe has been employed by General Electric for more than twenty-five years preceding this action.

In September 2011, Lambe filed a petition for dissolution. Following a two-day bench trial, the Jefferson Family Court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution on February 26, 2013. The family court's decree restored each party's non-marital assets and then divided their marital assets, which included significant real property and numerous investment and brokerage accounts.

The family court awarded the parties joint custody of the two children and determined that their monthly living expenses (excluding education costs) were $3,697. The court then ordered Lambe to pay child support in the amount of $2,150.09 per month in addition to the $108 per month that he paid in health insurance for the children. The family court also determined that because of Margaret's health issues, Weber was unable to obtain full-time employment. The family court estimated that Weber's reasonable monthly living expenses were $5,800 (including 39%, or $1,440, of the children's living expenses), which required taxable income

of about $7,300 per month. Accordingly, Lambe was ordered to pay maintenance in the amount of $7,300 per month for a period of nine years.

Finally, the family court found that Weber used $50,000 in marital assets to pay her attorney's fees, and credited Lambe with having contributed $25,000 of that amount. Due to the disparity in the parties' financial resources, Lambe was ordered to pay an additional $15,000 of Weber's attorney's fees.

Following entry of the decree, both parties filed motions to alter, amend, or vacate pursuant to Kentucky Rule of Civil Procedure (CR) 59.05. On April 30, 2013, the family court ruled on the motions, making minor changes to its original judgment but otherwise denying the parties' requests. Both parties appealed the family court's decree.

In an Order rendered November 14, 2014, the Court of Appeals determined that the family court erred by including a portion of the children's living expenses in its calculation of Weber's maintenance award. The Court of Appeals also found that the family court erred by failing to make findings that justified its award of maintenance for a period of nine years. We set forth additional background information as necessary below.

## II. STANDARD OF REVIEW.

A trial court is required to make specific findings of fact and set forth the conclusions of law it relied upon in rendering its judgement. CR 52.01. Because this matter was tried without a jury, the trial court's findings of fact "shall not be set aside unless clearly erroneous...." *Id.* "If the trial judge's findings of fact in the underlying action are not clearly erroneous, *i.e.*, are supported by substantial evidence, then the appellate court's role is confined to determining whether those

facts support the trial judge's legal conclusion." *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000). However, where the trial court exercises its discretion, its decision is reviewed for an abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). The trial court's conclusions of law are reviewed *de novo*. *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012).

## III. ANALYSIS.

**A. The family court's decision to include the children's living expenses in its calculation of Weber's reasonable living expenses was neither clearly erroneous nor an abuse of discretion.**

The family court ordered Lambe to pay 61% of the children's living expenses, which totaled $3,697 per month. After deducting Lambe's monthly payment for the children's health insurance, Lambe's child support contribution was $2,150.09 per month. The court then found that Weber could not maintain full-time employment until Margaret's medical condition stabilized. The family court found that Weber's reasonable monthly living expenses were $4,400. In addition, she was allocated about 39%,[1] or $1,440 of the children's living expenses. As such, her monthly living expenses totaling $5,800 included 39% of the children's living expenses. The court found that Weber's monthly living expenses would require taxable income of $7,300 per

month, and the court ordered Lambe to pay maintenance in that amount.

At the Court of Appeals, Lambe argued that the family court erred by including 39% of the children's living expenses within Weber's living expenses. Lambe contended that, because he was ordered to pay in child support 61% of the children's living expenses, he will, in fact, pay 100% of Weber's and the children's living expenses for nine years.

The Court of Appeals agreed with Lambe, holding that, "in calculating the amount and duration of maintenance, the family court is not to consider any amount expended by the party seeking maintenance for the care and support of a dependent child." In doing so, the Court of Appeals noted that while "maintenance is for the needs of the recipient spouse[,] ... the purpose of the statutes and the guidelines relating to child support ... is to secure the support needed by the children commensurate with the ability of the parents to meet those needs." Thus, the Court of Appeals remanded the issue to the family court to determine the amount of maintenance awarded to Weber without taking into account the children's living expenses.

■ Weber now challenges the Court of Appeals's decision. Specifically, she argues that, pursuant to Kentucky Revised Statute (KRS) 403.200, the family court was within its discretion to consider her child care burden when calculating her maintenance award. In response, Lambe argues that the Court of Appeals was correct in requiring the family court to calculate the

---

1. The family court stated that $1,440 amounted to 30% of the children's living expenses. However, given that Lambe was responsible for 61% of the children's living expenses, and that $1,440 is approximately 39% of the children's total monthly living expenses ($3,697), the trial court's "30%" appears to have been a typographical error. We recognize that 39%

of $3,697 is actually $1,441.83, nonetheless, the family court rounded that amount to $1,440, and we do not question its decision to do so. Furthermore, we assume that the court followed this same procedure in rounding Weber's total monthly living expenses from $5,840 to $5,800.

children's living expenses separate and apart from Weber's living expenses.

■ In reaching its maintenance determination, the family court noted that it has the discretion to award maintenance to either spouse if it finds the spouse seeking maintenance "lacks sufficient property" and "[i]s unable to support [her]self . . . or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." KRS 403.200(1). A maintenance award's amount and duration are within the sound discretion of the trial court. *Id.* ("The maintenance order shall be in such amounts and for such periods of time as the court deems just. . . ." *Gentry v. Gentry,* 798 S.W.2d 928, 937 (Ky. 1990)) ("[T]he award of maintenance is left to the trial court's sound discretion."). In determining the amount and duration of the maintenance award, the family court is to consider all relevant factors, including: "[t]he financial resources of the party seeking maintenance"; and her ability to meet her needs independently, "including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian[.]" KRS 403.200(2)(a).

In this case, Weber was acting as caretaker of Kevin and Margaret, the latter of whom required a significant amount of care, including frequent trips to various physicians, assistance with administration of insulin, and monitoring after meals. It appears the family court believed that Weber would have additional living expenses because of her role as Margaret's custodian and caretaker. In calculating those additional living expenses, the court took a percentage of the children's living expenses and added that amount to Weber's living expenses. As noted above, when determining maintenance, KRS

403.200(2)(a) permits the court to consider "the extent to which a provision for support of a child living with the party includes a sum for that party as custodian." Here, the court determined that a percentage of the children's living expenses, *i.e.,* the amount of child support due, included a sum for Weber as custodian, which the court appropriately attributed to her living expenses. In other words, the court determined that, because she was custodian of the parties' children and caretaker of Margaret, Weber's living expenses were greater than they would otherwise have been. As farther support for the court's decision to assign a percentage of the children's living expenses to Weber, in addition to KRS 403.250's requirement for modification, the court made the maintenance award specifically modifiable "in June of 2014, when Kevin completes 8th grade, or upon a change in Margaret's medical condition."

Finally, we note that Weber presented evidence that her living expenses, independent of any consideration of her role as custodian, were between $9,932 and $10,887. Therefore, the court could have simply awarded Weber maintenance in the amount of $7,300 without including any amount in her living expenses for her role as the children's custodian.

The parties' discrepancy in income, paired with Margaret's medical condition, presented a somewhat rare dilemma for the family court, forcing it to reconcile Kentucky's maintenance and child support statutes. We believe the family court acted appropriately and within the express provisions of both statutes in doing so. For the preceding reasons, we hold that the court's calculation of maintenance was not clearly erroneous as a matter of law, nor was it an abuse of discretion.

**B. The family court was within its discretion to award Weber maintenance for nine years.**

The family court ordered Lambe to pay maintenance to Weber for nine years. In rendering its decision, the family court found that Lambe was unable to provide for her reasonable monthly living expenses through adequate employment or property awarded to her, and that she could not maintain full-time employment until Margaret's medical condition stabilized.

At the Court of Appeals, Weber argued that she was entitled to permanent maintenance, given the length of the parties' marriage and her inability to find future employment, citing *Gripshover v. Gripshover*, 246 S.W.3d 460 (Ky. 2008). Lambe, on the other hand, argued that the award of maintenance, for a nine-year duration was excessive and an abuse of the family court's discretion. We note that this issue was properly before the Court of Appeals pursuant to Lambe's motion to alter, amend or vacate portions of the family court's findings of fact, conclusions of law, and judgment.

The Court of Appeals held that Weber was not entitled to permanent maintenance. In doing so, the court noted that Weber's reliance on *Gripshover* was misplaced. In *Gripshover*, our Court held that maintenance for longer periods and in greater amounts is warranted where "the marriage was long term, the dependent spouse is near retirement age, the discrepancy in incomes is great, or the prospects for self-sufficiency appear dismal." *Id.* at 470. The Court of Appeals noted that Weber was only forty-eight years old at the time and possesses a bachelor's degree in communications. Additionally, the Court of Appeals noted that one of the circumstances the family court used to justify its maintenance award—Margaret's precarious health—would not continue indefinite-

ly; therefore, Weber was not entitled to an award of permanent maintenance. However, the Court of Appeals made no determination regarding the appropriateness of the maintenance award's nine-year duration. Rather, it remanded the issue of duration to the family court with instructions for the court to make specific findings supporting its choice to award maintenance for nine years.

■ Having reviewed the record, we hold that the family court made sufficient findings of fact to justify the nine-year maintenance award. The family court noted that it considered the factors contained in KRS 403.200: the length of the parties' marriage; Weber's age, financial resources, and physical and emotional condition; and Lambe's ability to meet his needs and Weber's needs. Additionally, the family court found that Weber could not maintain full-time employment until Margaret's medical condition had stabilized, and it made the award specifically modifiable "in June of 2014, when Kevin completes 8th grade, or upon a change in Margaret's medical condition."

The duration of a maintenance award falls within the trial court's discretion. *Gentry*, 798 S.W.2d at 937 (Ky. 1990). The trial court was provided with sufficient evidence and it gave sufficient consideration to KRS 403.200's relevant factors in awarding Weber maintenance. As such, we discern that the family court's decision to award maintenance to Weber for nine years was within the court's discretion and was not error. For the preceding reasons, we reverse the Court of Appeals's decision to remand to the family court for further findings of fact.

■ The Court of Appeals, in *dicta*, stated: "The family court neither found that [Weber's] need for maintenance will terminate in nine years because of an in-

creased ability to meet her needs through property or employment income, nor found that [Lambe] will retain his ability to pay maintenance for nine years." If the Court of Appeals meant to direct the family court to make findings of Weber's ability to meet her own needs during the maintenance's nine-year duration, as well as Lambe's ability to pay during that time, that direction was in error. The trial court is not required to predict with certainty what the future financial situation of the parties will be for three reasons. First, the family court cannot possibly know what that parties' financial situation will be nine years into the future. Second, the family court is not required by statute to speculate as to the parties' future finances. Rather, the court must look at the parties' financial positions as they are at the time the parties appear before the court, and make reasonable determinations for that point in time and going forward. Finally, KRS 403.250 provides for modifying a maintenance decree upon "a showing of changed circumstances." As such, any change in the parties' financial situation is envisioned in the maintenance modification statute.

The family court should neither speculate as to whether Weber's need for maintenance will end because of an increased ability to meet her needs nor whether Lambe will receive the same level of income nine years from now as he is presently receiving. Accordingly, the Court of Appeals should not have directed the trial court to so speculate.

### C. The Court of Appeals did not err in affirming the family court's calculation of Lambe's income.

■ Weber argues that the Court of Appeals erred in affirming the family court's calculation of Lambe's income. She asserts that the family court erred by not considering Lambe's projected income for 2012, which reflected the fact that he his-

torically received a bonus of approximately $30,000 and a grant of stock options for every year since 2004.

In its ruling, the family court found the following:

At the inception of this case, Mr. Lambe held an executive position with G.E. Supply Chain Solutions, where he earned a base salary of $194,376 per year, plus an annual incentive bonus. His 2012 bonus was $30,700, bringing his total income to $225,076. The Court notes that Mr. Lambe's year-to-date income, as reflected on his November 11, 2012 pay statement is $256,615.32. However, that number is artificially inflated because it includes significant taxable income from his exercise of stock options. . . .

In the fall of 2012, G.E. underwent a management restructure that resulted in the elimination of Mr. Lambe's position. Mr. Lambe wished to remain with the company, so he considered several internal options. He ultimately accepted a position as Business Leader for G.E.'s Dishwasher Plastics Operations, which had no effect on his base salary. However, his new job is not an executive-level positon, so he is no longer eligible for an incentive bonus. Mr. Lambe will receive a bonus in February of 2013 for work performed in 2012. He may receive an additional bonus in 2014 as a type of severance, but that payment is not guaranteed.

Based on the foregoing, the Court finds that Mr. Lambe's current income is $225,076, which yields a gross monthly income of $18,756. The Court understands that Mr. Lambe's income may substantially decrease after 2013 or 2014, when his incentive pay has definitively ended.

We agree with the Court of Appeals that the family court "thoroughly considered all of the evidence concerning [Lambe's] income." The family court made detailed findings regarding Lambe's income after hearing testimony from the parties' jointly-retained accountant, Helen Cohen. The trial court's findings of fact were not clearly erroneous; therefore, the Court of Appeals did not err by affirming the trial court's ruling.

**D. The Court of Appeals properly found no abuse of discretion in the family court's denial of Weber's request that Lambe pay the entirety of her attorney's fees.**

■ Finally, Weber challenges the family court's decision to order Lambe to pay Weber only $15,000 of the $75,000 she requested in attorney's fees. Weber asserts that this decision was an abuse of the court's discretion. Prior to the family court rendering its decision, Weber, without permission from Lambe or the family court, liquidated more than $35,000 in mutual funds from the parties' joint account. Weber then paid this sum to her lawyer, despite the existence of a status quo order, which the family court noted in its judgment:

> After her recent liquidation of the parties' Vanguard Account, [Weber] has used $50,000 in marital assets to pay her attorney fees. Therefore, [Lambe] will be credited with having contributed $25,000. The Court orders him to pay an additional $15,000 in light of the disparity in the parties' financial resources.

■ KRS 403.220 states that, "after considering the financial resources of both parties, [the court] *may* order a party to pay a reasonable amount for the cost to the other party ... for attorney's fees." (Emphasis added). Thus, it is within the trial court's discretion to order one party to pay the other party's attorney's fees.

*See Neidlinger v. Neidlinger,* 52 S.W.3d 513, 519 (Ky. 2001) ("But even if a disparity exists, whether to make such an assignment and, if so, the amount to be assigned is within the discretion of the trial judge.") and *Wilhoit v. Wilhoit,* 521 S.W.2d 512, 514 (Ky. 1975) ("[A]n allocation of court costs and an award of an attorney's fees are entirely within the discretion of the court.").

■ The family court heard extensive testimony regarding Lambe's annual income and Weber's liquidation of the parties' jointly-held bank account. "[The] court is in the best position to observe conduct and tactics which waste the court's and attorneys' time and must be given wide latitude to sanction or discourage such conduct." *Gentry,* 798 S.W.2d at 938. We hold that the family court did not abuse its discretion in ordering Lambe to pay an additional $15,000 of Weber's attorney's fees. Therefore, the decision by the Court of Appeals is affirmed.

## IV. CONCLUSION.

For the reasons stated above, we affirm in part and reverse in part the opinion of the Court of Appeals.

All sitting. All concur.