RENDERED:  OCTOBER 23, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1628-MR

ANTHONY SIGLER                                                                          APPELLANT

v.
APPEAL FROM BULLITT CIRCUIT COURT
HONORABLE RODNEY BURRESS, JUDGE
ACTION NO. 12-CI-00485

JASMINE CURTIS AND MARY BETSY CURTIS                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  JONES, MAZE, AND L. THOMPSON, JUDGES.

JONES, JUDGE:  Appellant, Tony Sigler ("Tony"), appeals the order of the Bullitt Circuit Court, which overruled Tony's motion for partial summary judgment and, after a bench trial, ultimately granted a verdict in favor of the Appellees, Mary Betsy Curtis ("Betsy") and Jasmine Curtis ("Jasmine"), on Tony's claim for compensatory damages arising out of a dog bite he sustained on Betsy's property.

Tony relied on KRS[1] Chapter 258 and KRS 258.990(2) to bring suit after he was attacked by a dog while traversing Betsy's private property in 2011. The trial court determined that Tony's claim failed because he had been trespassing on Betsy's property at the time of the attack and could not prove that either of the Curtises owned the dog responsible.

Having reviewed the record in conjunction with all applicable legal authority, we affirm the trial court's judgment.

## I.  BACKGROUND AND PROCEDURAL HISTORY

The Sigler and Curtis families became neighbors at some point prior to 2011, when Tony and his wife, Rhonda, purchased a parcel of property from Betsy. At first, the two families were on good terms, and they socialized at several cookouts and birthday parties on each other's properties. However, the relationship had since soured, and the parties did not have a social relationship at the time of the incident. Although Tony testified that at one time he would visit Betsy on her property and she his, even Tony admitted that he had not been on Betsy's property since the fall of the prior year.[2]

---

[1] Kentucky Revised Statutes.

[2] Betsy testified that tension between the parties began developing during the construction of the Siglers' house. According to Betsy, Tony was irritated that it took six months for her to get water connected to the Siglers' new house while it was under construction, delaying their moving process. The conflict escalated when she informed Tony that part of his new driveway extended onto her property. Betsy further testified that during this time, Tony requested an easement for the driveway in exchange for not taking her to court for the delay in connecting his

In 2011, Betsy owned approximately thirty acres of land in a semi-secluded area of Bullitt County. Her property included two residences: a main house where Betsy resided and a smaller cottage her daughter Jasmine then occupied. Betsy's property bordered on the neighborhood in which Tony and Rhonda lived, although her property was separated from the Siglers' by a street. Betsy's property was entirely separate from the neighborhood, as her gated driveway connected to an outside road. However, at the edge of Betsy's property, a dirt "path" led up from the neighborhood in which the Siglers resided.

According to Betsy, the path was created when her waterline was installed and connected to the water main, but it was not intended to be a walkway to her property. Testimony from all parties indicated that the path was used primarily by Betsy and her children, although Tony claimed that he used this path when he went to visit Betsy. However, Rhonda testified at trial that she had observed Betsy prevent others from using the path when Betsy saw them attempt to do so. Instead, Betsy expected visitors to use the driveway to enter her property,

---

house to water. Although Tony testified that he did not learn of the driveway's encroachment until after the dog bite, Rhonda testified that her husband had mentioned Betsy informing him that the driveway was on her property prior to the incident.

However, it was not until the Siglers began to experience issues with runoff from utility construction on Betsy's property that the parties ceased to interact. Jasmine testified that Tony made several more attempts to obtain more property from Betsy. According to Jasmine, Tony requested that the property be sold to him at a discount or he would take legal action for the water connection delay and/or the runoff onto his driveway. Animosity arising from this conflict continued up until the day Tony was bitten and has not abated since.

posting "No Trespassing" signs throughout her property, including near the path, to discourage such action. Betsy had a number of "No Trespassing," "Private Property," and "Beware of Dog" signs throughout her property, and some portions of the property were secured by fencing.

In 2011, Betsy and Jasmine each owned German Shepherd dogs, Roxie and Charlie, respectively, for companionship and protection. As a rule, they kept their dogs tethered outside during the day while they were away from home at work, a fact attested to by Tony. However, both Rhonda and Betsy testified that at any given time, there were several other dogs roaming the neighborhood and surrounding areas freely. Betsy identified three of these dogs as two other German Shepherds and a Boxer belonging to neighborhood families.

On the afternoon of April 26, 2011, Tony entered Betsy's property, intending to discuss some unsightly runoff that was draining from Betsy's property onto his driveway. Rather than use Betsy's driveway, Tony opted to use the dirt path on Betsy's property as a shortcut to her house. Tony had not been invited onto Betsy's property, nor had he called ahead to inform her that he was coming over to discuss the runoff issue. All parties concurred that they were not on speaking terms at the time that Tony entered Betsy's property. In fact, Betsy stated that, at this point, she and her family had not interacted socially with the Siglers for approximately eighteen months. Rhonda agreed, testifying that she could not

recall the last time the parties socialized before the incident because they were not on good terms.

Unbeknownst to Tony, Betsy was still at work, having recently begun a new job as a school teacher. None of the Curtis family was home, although there was an old truck parked in the driveway. Betsy and Jasmine testified that, prior to leaving home, they had tethered Roxie and Charlie outside in the yard with wire cords as usual. Jasmine recalled that both dogs were still tethered when she left the property that morning.

When Tony was approximately halfway through the yard to Betsy's house, he spotted a German Shepherd approaching him from about twenty feet away. The dog was untethered and moving slowly toward him, and it appeared to be aggressive – its tail was not wagging. Tony knew that the Curtis family's dogs were not supposed to be loose. Despite these observations, Sigler continued toward Betsy's residence, and the dog attacked. The dog bit Sigler on the back of the right arm as he raised his arm to shield his face. After the bite, a second German Shepherd dog appeared, and Tony believes that this prevented the attacking dog from biting him again. Tony claimed that the dog that bit him was

Charlie, Jasmine's dog, and the dog that warded off any further attacks was Roxie, Betsy's dog, both of whom were supposed to be tethered.[3]

Tony yelled for help, but no one came to his aid, so he continued up to Betsy's house. When he realized no one was home, Tony armed himself with a rake from Betsy's garden and returned the way he had come. Once home, Tony called Rhonda at work so that she could take him to receive medical treatment for his wounds. Rhonda called Betsy to tell her that Tony had been bitten, who in turn called Jasmine. Tony received treatment and ultimately sustained no serious lasting injuries, although he still experiences a numb sensation in his arm around the bite site.

On April 24, 2014, Tony and Rhonda filed suit in Bullitt Circuit Court against Betsy, Jasmine, and David Curtis, Betsy's husband, relying on KRS Chapter 258 and KRS 258.990(2). After a period of inactivity, the trial court dismissed the case on July 23, 2015, for want of prosecution. The trial court set aside this order on August 10, 2015, but no immediate activity resulted.

On July 10, 2019, more than five years after filing suit, Tony moved for partial summary judgment, arguing that the Curtises were strictly liable for his

---

[3] When Jasmine arrived home around 5:30 p.m., Charlie was no longer tethered outside of the guesthouse; instead, he was inside. The record is unclear how Charlie got inside the guesthouse and contains no details regarding Roxie's whereabouts when the family returned home.

injury as a matter of law pursuant to KRS 258.235(4) and *Maupin v. Tankersley*, 540 S.W.3d 357 (Ky. 2018). Betsy filed a response to Tony's motion for summary judgment and her own cross-motion for summary judgment. She maintained that Tony was a trespasser on her property at the time of the incident and, as such, she could not be held strictly liable under KRS 258.095(6). She argued that, according to KRS 258.095(6), a dog owner shall not be liable for a dog "attack" on a person who has illegally entered or is trespassing on the dog owner's property.

On August 5, 2019, the court heard oral argument on the parties' motions for partial summary judgment. The court found that there were material issues of fact and denied the motions for summary judgment. A bench trial was held on August 9, 2019. Tony, Betsy, and Jasmine were present and represented. Defendant David Curtis was not present, and his court-appointed warning order attorney, Victoria Oakley, did not appear.

The trial court rendered its judgment and findings of fact on September 27, 2019. Therein, the trial court made two key findings of fact. First, the court found that Tony was a trespasser on Betsy's property at the time of the dog attack, rendering KRS 258.095 inapplicable to his claim. The trial court determined that because of Betsy's attempts to keep others from using the path to enter her property and the posted signage, the path Tony used to gain entrance to

Betsy's property was not "an acceptable means of egress to and from [Betsy's] residence." Order at 4. Based on this finding, the trial court concluded:

> [Tony] testified that he entered [Betsy's] property in his own interest because he wanted to ask [Betsy] about planning to clean the road and driveway of the runoff from her property. [Tony] testified that he did not have permission to be on [Betsy's] property on the date the incident occurred and that he had not contacted the [Curtises] before entering the property. This court finds that the Plaintiff entered upon the property of [Betsy], without any right, lawful authority or invitation, either express or implied and was therefore, at the time of the incident alleged in this action, a trespasser.
>
> Thus, [Tony] unlawfully entered the premises as provided in KRS § 381.231(1) and KRS § 511.090. The [Curtises'] testimony indicates that they were at work when [Tony] entered the property and that they were unaware of his presence on the property at the time of the dog attack. It is well established that people are "not required to anticipate the intrusion of others." Kentucky Cent. R. Co. v. Gastineau's Adm'r, 83 Ky. 119, 7 Ky. L. Rptr. 3, 3 (1885). Therefore, [the] Court finds that [Tony] was trespassing on [Betsy's] property at the time of the dog attack and the [Curtises] are not strictly liable.

Order at 5-6.

Second, the trial court found that Tony had not satisfied his burden of proof in establishing that the dog that bit him was owned by either of the Curtises. The trial court noted that although Tony claimed he could tell the Curtises' dogs apart because one was darker than the other, he could not remember which dog was the darker of the two or whether the darker or the lighter dog had bitten him.

-8-

The trial court observed that several other dogs were known to roam the neighborhood, including two German Shepherds, and concluded that since the Curtis family's dogs had been tethered by their owners on April 26, 2011, "they could not be the dog which was loose and bit the Plaintiff." Order at 7.

This appeal followed.

## II. STANDARD OF REVIEW

Different standards of review apply depending on whether we are reviewing findings of fact or conclusions of law. *KL & JL Investments, Inc. v. Lynch*, 472 S.W.3d 540, 544 (Ky. App. 2015), *as modified* (Apr. 17, 2015). In actions tried upon the facts without a jury, we review the trial court's findings of fact under a clearly erroneous standard, and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[4] 52.01; *McVicker v. McVicker*, 461 S.W.3d 404, 416 (Ky. App. 2015). We may set aside a lower court's findings pursuant to CR 52.01 "only if those findings are clearly erroneous." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Findings of fact are clearly erroneous if they are not supported by substantial evidence. *Patmon v. Hobbs*, 280 S.W.3d 589, 593 (Ky. App. 2009) (citing *Cole v. Gilvin*, 59 S.W.3d 468, 472 (Ky. App. 2001)).

According to our Supreme Court:

---

[4] Kentucky Rules of Civil Procedure.

"[S]ubstantial evidence" is "[e]vidence that a reasonable mind would accept as adequate to support a conclusion" and evidence that, when "taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men." Regardless of conflicting evidence, the weight of the evidence, or the fact that the reviewing court would have reached a contrary finding, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses" because judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal," and appellate courts should not disturb trial court findings that are supported by substantial evidence.

*Moore*, 110 S.W.3d at 354 (citations omitted).

"However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo*." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (citing *Sawyers v. Better*, 384 S.W.3d 107, 110 (Ky. 2012)).

### III.   ANALYSIS

On appeal, Tony alleges the following counts of error: (1) the trial court erred by using a comparative fault analysis rather than a contributory negligence analysis when addressing strict liability; (2) the trial court erred in finding that Tony could not satisfy his burden of proof in identifying the dog that bit him; (3) the trial court incorrectly determined that Tony was a trespasser; and

(4) the trial court incorrectly determined that the path between the parties' houses was not a means of ingress and egress to Betsy's property.

Tony contends that the trial court "did not use a comparative fault analysis when deciding this case and instead implemented the contributory negligence standard which is no longer the law to be applied in negligence/dog-bite cases in the Commonwealth." Appellant's Br. at 9. Tony further argues that "any negligence (if any) in coming onto the Curtises' property unannounced would not be a total bar to his claim as found herein by the trial Court [sic]." *Id.*

Tony is correct that, under Kentucky law, dog bite cases require a comparative fault analysis. "A dog owner is strictly liable for injuries caused when his dog attacks a person." *Maupin*, 540 S.W.3d at 360.

> A comparative fault analysis of the damages in dog bite cases is mandated by KRS 411.182(2). Therefore, it is appropriate for the jury, during the calculation of damages phase, to lessen the liable owner's monetary responsibility for the victim's injuries if the facts demonstrate that the victim's own negligent or intentional acts contributed to the dog attack's occurrence.

*Id.* at 361. However, in order for the court to undertake that analysis, it must make a number of factual findings – namely, whether Tony sufficiently identified the dog owner to be held liable and whether he was trespassing on the property where he was bitten. *Id.* A defendant cannot be held strictly liable for the actions of a

-11-

dog not proven to belong to him; only once a defendant is deemed to be the owner

and liable may the court consider the comparative fault of the parties. *See id*.

KRS 258.235(4) reads: "[a]ny owner whose dog is found to have

caused damage to a person, livestock, or other property shall be responsible for that

damage." KRS 258.235(4). The Kentucky Supreme Court has previously

expounded upon the General Assembly's intent regarding the purpose of KRS

258.235:

> The statute in question is the progeny of years of
> evolution in the law of dog attacks. Without KRS
> 258.235(4) or its predecessor statutes, common law
> negligence would govern dog bite cases. Thus, the
> General Assembly's intent in passing these statutes is
> clear: to mandate that dog owners are strictly responsible
> for injuries caused by their dogs.

*Maupin*, 540 S.W.3d at 359.

Thus, Kentucky law holds dog owners strictly liable for injuries

caused by their dogs under KRS 258.235 and 258.095 *only upon proof of*

*ownership*. *Maupin*, 540 S.W.3d at 364 (VanMeter, J., concurring in part and

dissenting in part); *Benningfield ex rel. Benningfield v. Zinsmeister*, 367 S.W.3d

561, 567 (Ky. 2012), *as modified* (Jun. 25, 2012) (holding that a landlord may be a

statutory owner under KRS 258.095(5) if it can be proven that the landlord

permitted his tenant's dog to remain on his property).

-12-

"A plaintiff must . . . show that the defendant was an owner of the dog under the statute." *Benningfield*, 367 S.W.3d at 567; *Maupin*, 540 S.W.3d at 360 ("[A] dog 'owner' as defined in KRS 258.095(5) is liable."). KRS 258.095(5) defines an "owner" for the purposes of Chapter 258 as

> (a) Every person having a right of property in the dog; and
>
> (b) Every person who:
>
> > 1. Keeps or harbors the dog;
> >
> > 2. Has the dog in his or her care;
> >
> > 3. Permits the dog to remain on or about premises owned and occupied by him or her; or
> >
> > 4. Permits the dog to remain on or about premises leased and occupied by him or her[.]

KRS 258.095(5). "Aside from the actual owner of the dog, the statutory definition of owner mostly includes persons into whose care the dog may be committed, either directly or indirectly, for example, by taking in a stray ('keeps or harbors the dog, or has it in his care')." *Benningfield*, 367 S.W.3d at 569.

As plaintiff, Tony carries the burden of proof. *Id*. at 567. Tony could not offer any proof beyond his own belief that the dog that bit him was Charlie, Jasmine's German Shepherd. *See Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) ("'Belief' is not evidence . . . ."). Tony could only testify that he

was once able to tell Charlie and Roxie apart by the darkness of their fur but could no longer remember which dog was darker. Significantly, he also could not remember whether the dog that bit him was darker or lighter in color.

Tony claims that the Curtises' actions following the dog bite demonstrate that Charlie was the dog that attacked him. It is true that the Curtises rehomed Charlie following the dog attack for fear that Charlie would be put down. However, all this goes to show only that Jasmine feared for her pet's life and wanted to protect him from harm; it does not provide affirmative evidence that Charlie was the dog that attacked Tony. For circumstantial evidence to support a claim, "it must do more than suggest a possibility, and a recovery is not authorized if liability is a matter of conjecture, surmise or speculation; if a [factfinder] is required to speculate, the party must lose upon whom the burden of proof ultimately rests." *Gross v. Barrett*, 350 S.W.2d 457, 459 (Ky. 1961).

In fact, if we assume that both Jasmine's and Betsy's dogs escaped their tethers, the dog that bit Tony could have been any one of four German Shepherds. Both Betsy and Rhonda testified that there were other dogs that roamed the area. According to Betsy, these included two other German Shepherds. Tony has not presented any affirmative evidence that the dog that attacked him was in the Curtises' care or even permitted to remain on the premises owned by Betsy.

-14-

"A recovery based upon such speculation is abhorrent to the law."

*Phoenix Amusement Co. v. Padgett's Adm'x*, 192 S.W.2d 105, 107 (Ky. 1946).  As

such, the trial court correctly determined that Tony had failed to establish that

either Jasmine or Betsy was the "owner" of the dog that attacked Tony for the

purpose of KRS 258.095; therefore, neither Betsy nor Jasmine can be held strictly

liable for Tony's injuries.

We note that, even if the trial court had concluded that the Curtises

were the owners of the dog that bit Tony, Tony would still have been prevented

from recovering under KRS 258.095(6).  Significantly, KRS 258.095(6) defines an

"attack" as "a dog's attempt to bite or successful bite of a human being[,]"

providing that "[t]his definition *shall not apply* to a dog's attack of a person who

has illegally entered or is trespassing on the dog owner's property in violation of

KRS 511.060, 511.070, 511.080, or 511.090."  KRS 258.095(6) (emphasis added).

Our Court has previously provided:

Statutory law is consistent in its definition of a trespasser.
KRS 381.231 defines a "trespasser" as "any person who
enters or goes upon the real estate of another without any
right, lawful authority or invitation, either expressed or
implied[.]"  In the criminal context, . . . KRS 511.090
provides that "[a] person 'enters or remains unlawfully'
in or upon premises when he is not privileged or licensed
to do so."

As the above definitions indicate, either in the civil or
criminal context, a person who enters the property of
another "by express invitation or implied acquiescence of

-15-

> the owner or occupant solely on [his] own business, pleasure or convenience" is not a trespasser. *Scuddy Coal Co. v. Couch*, 274 S.W.2d 388, 390 (Ky. 1954).

*Howard v. Spradlin*, 562 S.W.3d 281, 285 (Ky. App. 2018).

"Habitual or customary use of property for a particular purpose, without objection from the owner or occupant, may give rise to an implication of consent to such use to the extent that the users have the status of licensees, where such habitual use or custom has existed to the knowledge of the owner or occupant and has been accepted or acquiesced in by him." *Bradford v. Clifton*, 379 S.W.2d 249, 250 (Ky. 1964). Property owners may voice their objection to others' use of their property through the presence of "no trespassing" signs. In *Howard v. Spradlin*, our Court differentiated between trespassers and licensees in terms of implied consent. In that case, we held that a defendant was a licensee rather than a trespasser when he parked in the plaintiffs' parking lot after hours. *Howard*, 562 S.W.3d at 285. The defendant had habitually and customarily parked on the store lot after hours without any objection, and the plaintiffs had not posted any "no trespassing" signage on the plaintiffs' parking lot to provide notice that parking there after hours was prohibited. *Id.* Our Court further reasoned that the defendant was a licensee because the plaintiffs had never objected to "anyone parking on the premise at any time, people often parked on the store lot after hours without their

-16-

objection, and they believed it was beneficial to their business for people to park there." *Id.* at 285-86.

The same rule applies for householders. "[T]here exists an implied invitation for one to come up to the house of another for information, visitation, or the like." *Perry v. Williamson*, 824 S.W.2d 869, 872 (Ky. 1992) (citing *City of Mt. Sterling v. Donaldson Baking Co.*, 287 Ky. 781, 155 S.W.2d 237 (1941)). That invitation depends, of course, upon custom, and, significantly, may be rescinded by "placard" or signage warning would-be visitors away. *Donaldson Baking Co.*, 155 S.W.2d at 239.

The trial court found that Tony had entered Betsy's property in violation of KRS 511.090 and KRS 381.231 and, thus, Tony was not "attacked" sufficiently to invoke KRS 258.095. The evidence before the trial court showed that Betsy had posted a number of "No Trespassing" signs about her property, including near the path. Rhonda testified before the court that she had seen Betsy object to people's use of the path on several occasions. It is clear from Betsy's efforts that unanticipated visitors were not welcome on her property, particularly upon the path, and therefore the path was not an acceptable means of access to Betsy's property. Tony testified at trial that Betsy's "No Trespassing" signs did not apply to him; he argues before our Court that he had an "'implied privilege or invitation' based upon historical precedent" to walk upon Betsy's land. Tony has

cited to no case law supporting this privilege, and we will not entertain this notion. Appellant's Br. at 11. Inviting a neighbor upon one's property on specific occasions does not create an "implied right to visit" whenever one deigns to do so. This is particularly true where, as in this case, the visitor accesses a part of the property guests are customarily not permitted to access and are warned against doing so by signage. We agree with the trial court's determination that Tony was a trespasser under KRS 511.090.

Tony appears to argue that the trial court's determination as to whether he was trespassing on Betsy's property at the time of the bite should not bar his claim, but rather play a role in the court's comparative fault analysis. However, Tony was not "attacked" according to the definition provided by KRS 258.095(6) because he was trespassing at the time he was bitten. This was not a matter of the trial court misapplying a contributory fault analysis to a claim necessitating a comparative fault analysis; rather, the court found that Tony's claim failed entirely because he could not establish that he had (1) been "attacked" under KRS 258.095(6) and (2) by a dog belonging to the Curtises.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM the judgment of the Bullitt Circuit Court.

ALL CONCUR.

-18-

BRIEFS FOR APPELLANT:

J. Gregory Joyner
Louisville, Kentucky

BRIEF FOR APPELLEE
JASMINE CURTIS:

James D. Winchell
Shepherdsville, Kentucky

BRIEF FOR APPELLEE
MARY BETSY CURTIS:

Kirk Hoskins
Louisville, Kentucky