RENDERED:  AUGUST 4, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0537-MR

KIRBY W. HOLLADAY, JR. AND
PAMELA J. HOLLADAY                                          APPELLANTS


APPEAL FROM JEFFERSON CIRCUIT COURT
v.             HONORABLE MITCH PERRY, JUDGE
ACTION NO. 13-CI-004714


FRANK L. ALEXANDER, II AND
ROYA ALEXANDER                                              APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  Kirby and Pamela Holladay ("Holladays") appeal from the

Jefferson Circuit Court's judgment terminating their right to a parking easement on

Frank and Roya Alexander's property.  For the reasons below, we reverse and

remand.

This appeal is the latest in an ongoing easement dispute between the Holladays and Alexanders. In *Holladay v. Alexander*, No. 2015-CA-001718-MR, 2018 WL 2992976 (Ky. App. Jun. 15, 2018), a panel of this Court held the Holladays had a valid easement to park on the Alexanders' property and that the Holladays' improvements, including pouring a concrete pad and adding retaining walls, did not violate the scope of the easement. Subsequently, the Holladays filed a second amended complaint seeking injunctive relief and damages for the Alexanders' interference with their use and enjoyment of the easement. On January 1, 2022, the trial court conducted a bench trial prior to entering a final declaration of rights concerning the easement.

At trial, Mr. Holladay testified about Mr. Alexander's various interference with the Holladays' use and enjoyment of the easement, including parking cars on the easement so that the Holladays could not access it, spray painting "no trespassing" on the easement, fencing off the easement, and attempting to tow the Holladays' vehicles from the easement. On cross examination, Mr. Holladay admitted he had accidentally performed some work outside of the easement area and that one of the walls he constructed around the easement was on the Alexanders' property.

He was also questioned about the scope and his use of the easement. Mr. Holladay stated his granddaughter and his dog sometimes play on the concrete

pad, and he has conducted a yard sale on the easement, but he did not believe these uses were outside the easement's scope. He further testified pedestrians sometimes walk or sit on the easement during the St. James Art Show, which takes place in their neighborhood, but he does not invite them to do so. The Alexanders did not testify.

Following the evidence, the trial court entered findings of fact, conclusions of law, and a judgment terminating the Holladays' easement.[1] Relevant to the appeal, the trial court found the Holladays performed "significant construction" on the easement to install a concrete parking pad surrounded by brick retaining walls and that "[s]ome of this construction went beyond the easement area." It also found the Holladays considered the parking area as their own and that the parties' relationship had deteriorated.

Based upon these findings, the court concluded the landowners had "completely frustrat[ed] the purpose of the easement by their conduct and behavior, with the Holladays going far beyond the scope of the easement, and effectively attempting an unprecedented private taking of property." Noting the urban setting of the easement and its limited size and scope, the court found this "micro-easement . . . bears no practical similarity to the utility, railroad, or public

---

[1] The court also entered a separate order addressing the status of the easement for title purposes. The Holladays appeal from both orders.

road easements" in Kentucky case law. Thus, the trial court relied upon the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10 (2000), which allows a court to terminate an easement when a change has made it practically impossible to accomplish the purpose of the easement, as its legal basis for terminating the servitude.

The court determined the easement's original purpose was for the property owners to "peacefully share" the parking area, which was practically impossible because the parties could not get along. It further found that "[t]hrough their actions, the [Holladays] have attempted to impermissibly enlarge the burden on the servient estate, frustrating the purpose of the easement." The court ruled that mere modification of the easement would not be effective due to the animosity of the parties and therefore concluded it had no other choice but to terminate the easement. This appeal followed.

As this is an appeal from a bench trial, the court's factual findings are "not [to] be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR[2] 52.01. A factual finding is not clearly erroneous if it is supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). However,

---

[2] Kentucky Rules of Civil Procedure.

we review the trial court's conclusions of law *de novo*. *Sawyers v. Beller*, 384 S.W.3d 107, 110 (Ky. 2012) (citation omitted).

The Holladays argue the trial court erred in terminating their easement based upon the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10; its finding that the Holladays have violated the scope of the easement is not supported by substantial evidence; and erred in failing to grant an injunction enjoining the Alexanders from interfering with their use of the easement. We agree.

We begin by noting that easement forfeitures are not favored in the law. *Dukes v. Link*, 315 S.W.3d 712, 718 (Ky. App. 2010). And an express easement, like the one in this case, generally lasts forever unless terminated or extinguished by an act of the parties such as abandonment, conveyance, or merger. *Scott v. Long Valley Farm Kentucky, Inc.*, 804 S.W.2d 15, 16 (Ky. App. 1991). Here, however, the trial court relied upon the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10 to terminate the easement.[3]

That section provides:

> When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the

---

[3] The trial court looked to the Restatement, at least in part, due to its erroneous conclusion that because of the urban setting and limited size of the parking easement that it "bears no practical similarity to the utility, railroad, or public road easement[]" cases in Kentucky and, therefore, "there is very little caselaw on easements such as this." We would note that Kentucky caselaw on easements is generally applicable to this case, despite its factual differences.

-5-

purpose to be accomplished.  If modification is not practicable, or would not be effective, a court may terminate the servitude.

There is no Kentucky caselaw discussing this section of the RESTATEMENT (THIRD) OF PROPERTY:  SERVITUDES, or even citing it.  It would appear Kentucky has not yet adopted Section 7.10.  Regardless, we find the trial court's reliance upon it misplaced.  The trial court found the parties' hostility made it "impossible as a practical matter to accomplish the purpose for which the servitude was created," quoting Section 7.10.  However, we have found no authority, in Kentucky or otherwise, terminating an easement simply because the parties could not get along.  In fact, according to the evidence, Mr. Alexander was the primary agitator.  "[A]n easement appurtenant cannot be unilaterally terminated by the grantee of the servient estate . . . ."  *Wood v. Simon*, 251 N.Y.S.2d 621, 624 (N.Y. Super. Ct. 1964); *see also Van Horn v. Harmony Sand & Gravel, Inc.*, 122 A.3d 1021, 1028 (N.J. Super. Ct. App. Div. 2015) (citation omitted) ("Only the holder of the easement is able to unilaterally terminate an easement through renunciation.").

The Comment to the RESTATEMENT (THIRD) OF PROPERTY:  SERVITUDES § 7.10 makes it clear that this section applies in situations where a servitude no longer serves any useful purpose.  According to Comment a, the rationale behind Section 7.10 is to prevent obsolete servitudes from interfering

with desirable uses of land.  Further, "[b]ecause servitudes create property interests that are generally valuable, courts apply the changed-conditions doctrine with caution.  Of the many changed-conditions cases that have produced appellate decisions, few result in modification or termination of a servitude."  RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 7.10 cmt. a.  "The test is stringent:  relief is granted only if the purpose of the servitude can no longer be accomplished."  *Id.* "If use of the servient estate can still be made within the confines of the servitude and the purpose of the servitude can still be accomplished, there are no grounds for judicial modification or termination of the servitude under this section."  *Id.* at cmt. b.

Here, there is no evidence the parking easement is obsolete or no longer serves any useful purpose.  We disagree with the trial court's determination that the purpose of the servitude was for the "neighbors to peacefully share [the] parking area[.]"  In *Holladay*, 2018 WL 2992976, at *5, we held the purpose of the easement was to establish a "parking area . . . for the benefit of the dominant estate (Holladays)."  Just because Mr. Alexander dislikes the servitude or disagrees with its existence, or because the parties cannot coexist peacefully, does not mean the

purpose of the servitude can no longer be accomplished. The remedy for continued interference by Mr. Alexander is an injunction.[4]

The trial court's ruling was apparently also based upon the Holladays' misuse of the easement, as it found the Holladays "have managed to completely frustrate the purpose of the easement by their conduct and behavior, going far beyond the scope of the easement, and effectively attempting an unprecedented taking of private property." But the trial court made no findings to support this conclusion. While it noted "[t]he testimony at the bench trial only confirmed that it was indeed the [Holladays'] intention to complete a decade long push to take this property[,]" the only finding concerning the Holladays' (mis)use of the easement was that they "performed significant construction on the easement to install a concrete parking pad with brick retaining walls surrounding the pad. Some of this construction went beyond the easement area."

However, we ruled in *Holladay*, 2018 WL 2992976, at *5, that neither the concrete pad nor brick retaining walls violated the scope of the easement. While one of the retaining walls was constructed on the Alexanders' property outside the easement, that wall has since been removed, and this act alone cannot

---

[4] As recently as July 2022, we noted that "Appellants continue[] to obstruct the Holladays' use and enjoyment of the easement even after the first panel of this Court expressly ruled that the easement was appurtenant to the land and enured to the benefit of the Holladays." *Alexander v. Owners Insurance Company*, No. 2021-CA-0959-MR, 2022 WL 2542119, at *3 (Ky. App. Jul. 8, 2022).

work to support a forfeiture.[5] "An easement is not lost by its use in an unauthorized manner or to an unauthorized extent, unless the misuse of the easement is willful and substantial and not merely minor or technical."[6] 28A C.J.S. *Easements* § 165.

The only other evidence at trial concerning the Holladays' use of the easement was that they once held a yard sale on the concrete pad, placed their garbage cans there, and their granddaughter sometimes played on the parking area. Even if these actions constituted misuse of the easement,[7] such misuse is not substantial enough to terminate the easement. Forfeitures of easements based upon misuse are not favored in Kentucky. *O'Banion v. Cunningham*, 168 Ky. 322, 182

---

[5] In voiding the easement, the trial court also noted the Alexanders "are responsible for ensuring compliance with a multitude of governmental entities, while not having actual control over the area to perfect that compliance." However, we recognized in *Holladay*, 2018 WL 2992976, at *5, that "a party making improvements to an easement has the obligation regarding applicable laws and regulations and would be responsible for any repercussions stemming from his failure to comply."

[6] Mr. Holladay conceded he performed some work outside of the easement, but testified it was an accident based upon incorrect calculations.

[7] It is the general rule that "[a] right-of-way easement created by a conveyance in general terms and without any restrictions on its use is to be construed as broad enough to permit any use that is reasonably connected with the reasonable use of the land to which it is appurtenant." 28A C.J.S. *Easements* § 199. And "owners of [an] easement are not strictly limited to purposes for which it had been historically used." *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012) (citing *Cameron v. Barton*, 272 S.W.2d 40 (Ky. 1954)). The easement agreement in this case provided a "parking and access area . . . whereby access is given to the Grantee across the property of the Grantors, and parking area is provided on the property of the Grantors." The easement was to provide "pedestrian and vehicular access, ingress and egress . . . for the benefit of [grantee]." We question whether the grant of a parking area for "access, ingress and egress" is so specific as to limit use of the easement only to parking or coming and going and not uses reasonably connected to a parking area such as riding a bicycle or staging garbage cans.

S.W. 185, 186 (1916). And generally, the proper remedy for misuse is an action for damages or an injunction. *Id; see also* 28A C.J.S. *Easements* § 165 (citations omitted) ("Misuser does not authorize the owner of the servient estate to prevent a further use of the easement by erecting obstructions, or by restraining the owner of the easement by force or violence, the proper remedy being an action for damages, or for an injunction if the remedy at law is inadequate."). Therefore, we find the trial court erred in terminating the easement, whether under the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 7.10 or due to misuse.

Lastly, the Holladays argue the trial court erred in failing to grant injunctive relief restricting the Alexanders from interfering with their use and enjoyment of the easement. Injunctive relief is an extraordinary remedy and is best left to the sound discretion of the trial court. *Maupin v. Stansbury*, 575 S.W.2d 695, 697 (Ky. App. 1978) (citations omitted). Further, CR 52.01 states, "in granting or refusing temporary injunctions or permanent injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action." Here, the trial court implicitly denied the Holladays' claim for injunctive relief when it terminated the easement, however it did not explicitly address the claim in its order or make any related findings. Because we have found the trial court erred in terminating the easement, we remand the issue of

whether a permanent injunction against the Alexanders' interference with the Holladays' use and enjoyment of the easement is appropriate.

Therefore, we reverse the orders of the Jefferson Circuit Court and remand this matter for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

John H. Dwyer, Jr.
Janice M. Theriot
Louisville, Kentucky

BRIEF FOR APPELLEES:

Brian H. Stephenson
C. Michael Van Sickle
Louisville, Kentucky